**Darrel M. MAYMON, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 48A02–0611–PC–1060.**

Court of Appeals of Indiana.

July 24, 2007.

Susan K. Carpenter, Public Defender of Indiana, James T. Acklin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Darrel M. Maymon appeals the denial of his petition for post-conviction relief from his convictions on two counts of burglary[1] as Class B felonies and two counts of burglary[2] as Class A felonies. He raises the following restated issue: whether he received effective assistance of trial coun-

---

1. *See* IC 35–43–2–1(1).

2. *See* IC 35–43–2–1(2).

sel when his attorney failed to move to sever the four charges.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Maymon's convictions as set forth by this court on his direct appeal are as follows:

The facts of this case involve four burglaries in Madison County, Indiana. The first burglary occurred at the residence of Gene and Nancy Burris. On June 21, 2001, the Burrises returned home from a shopping trip and discovered that someone had broken into their house through the back door. The Burrises had been away from their home from 9:30 a.m. to 11:30 a.m. A piggy bank containing change, a pair of binoculars, and other property was missing from the Burrises' home. The Burrises' neighbors, Jason and Lois Goacher, saw a blue Chevette with a yellow mattress tied to the top of it turn into the Burrises' driveway between 9:30 a.m. and 11:00 a.m. The Goachers testified that the blue Chevette sat in the Burrises' driveway for approximately fifteen to twenty minutes. Maymon's neighbor, Billy Sigler, testified that Maymon drove a blue Chevette in July of 2001. Sigler further testified that Maymon had access to a van with a mattress on top of it. Detective Daryl McCormick investigated the break-in at the Burrises' home and testified that Sigler told him that Sigler had seen a mattress on top of Maymon's blue Chevette. On November 9, 2001, after executing a search warrant at Maymon's house, the police found a piggy bank and a pair of binoculars. Both items were identified by the Burrises as belonging to them.

The second burglary occurred ten days later at ninety-four year old Marjorie Hoffman's house. At approximately 3:00 p.m. on July 2, 2001, Hoffman heard a noise and saw an unfamiliar blue or gray car parked in her driveway. She saw a man run up to the front of her house and she noticed that the window to her enclosed porch, which is attached to the front of her house, had been "jerked out of the porch." Appellant's Appendix at 330. She saw the man trying to get into her house through the front door, which was unlocked but had a security chain on it. The man was "kicking the door and pushing and kicking the door and raving outside." *Id.* at 334. Hoffman pushed her knee and arms against the door in an attempt to keep the man out. Hoffman's telephone was next to the door and she called 9-1-1. The intruder then ran away. Hoffman later identified Maymon as her intruder. She also identified Maymon's car as the car that she had seen in her driveway. Hoffman's daughter, Phyllis Magers, lives directly across the street from Hoffman. Magers testified that approximately two weeks prior to this incident, she saw Maymon's blue car in Hoffman's driveway. Hoffman sustained injuries to her finger and knee as a result of the incident.

Kenny Gross owned a mobile home park and Maymon was one of his tenants. On July 21, 2001, Maymon moved into the mobile home park and, at that time, was driving a blue Chevette. However, on September 7, 2001, the police impounded the blue Chevette because it was involved in an accident. Maymon then began driving a red or wine colored Chevette.

The third burglary occurred approximately two months later at Amy Macomber's house. On September 11, 2001, Macomber left her house at approximately 10:30 a.m. and returned at

approximately 1:30 p.m. That evening, Macomber noticed that a three foot tall plastic Coca–Cola change jar was missing. Macomber also noticed that she was missing "some DVD's, play station games, a play station 2 ... [her] husband's baseball cards," jewelry, a laptop computer, a camera, a camcorder, and some money. *Id.* at 239–241. The baseball cards were kept in a three-ring, red binder. Kim Thomas was painting a garage next door and saw a red Chevette parked at Macomber's house. Thomas saw a man with brown hair and wearing blue jeans get out of the red Chevette, knock on Macomber's door, and enter Macomber's home. Thomas identified Maymon's car as being the car that she saw in Macomber's driveway. Sometime after September 11, 2001, Louis William Moyer, an acquaintance of Maymon, was in the South Park Tavern when Maymon offered to sell him a three-ring binder full of baseball and football cards. In addition, Gross, Maymon's landlord, testified that he saw a large replica of a Coca–Cola bottle in the mobile home trash area. The bottle had been cut at the bottom so that its contents could be removed.

The fourth burglary occurred two days later at Thomas Gary's home. Gary's house is located "[a]bout a quarter mile" west of Macomber's house. *Id.* at 261. On the afternoon of September 13, 2001, Gary saw a man with a cigar in his mouth, who he later identified as Maymon, walk up to his house, open the screen door, and knock on the inside door. Gary was inside his home, but Maymon could not see him. Maymon then went to Gary's bay window and peered inside. Maymon walked back to the front door, opened it, and entered Gary's house. Gary grabbed Maymon and threw him outside. After a short scuffle, Gary released Maymon

and called 9–1–1. Gary testified that Maymon was driving a "red faded out smaller car." *Id.* at 265. As a result of the scuffle, [Gary] sustained a small cut to the back of his hand.

*Maymon v. State,* 792 N.E.2d 101 (Ind.Ct. App., 2003); Appellant's App. at 150–52.

Maymon was charged with two counts of Class B felony burglary and two counts of Class A felony burglary. His trial attorney did not move for severance of the charges, and Maymon was found guilty of all four counts after a jury trial. On direct appeal, this court affirmed Maymon's convictions, but remanded with instructions to impose presumptive sentences for all of his convictions.

Maymon filed a petition for post-conviction relief alleging ineffective assistance of his trial counsel because of a failure to request severance of the charges. After an evidentiary hearing, the post-conviction court adopted the State's proposed findings of fact and conclusions and denied relief. Maymon now appeals.

## DISCUSSION AND DECISION

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied* (2002); *Wieland v. State,* 848 N.E.2d 679, 681 (Ind.Ct.App. 2006), *trans. denied, cert. denied.* The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben–Yisrayl,* 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

■ When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *McCary v. State,* 761 N.E.2d 389, 391 (Ind.2002). The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.* at 391–92. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004). We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Id.*

Maymon initially contends that it is inappropriate to apply the usual standard of review to this case. He claims that we should apply "cautious appellate scrutiny" because the post-conviction court adopted the State's proposed findings and conclusions verbatim when it denied his petition for post-conviction relief. Although our Supreme Court has stated that "near verbatim reproductions [of proposed findings] may appropriately justify cautious appellate scrutiny," *Stevens v. State,* 770 N.E.2d 739, 762 (Ind.2002), *cert. denied* (2003), it has also declined to modify the clearly erroneous standard of review applicable to post-conviction relief cases when a post-conviction court adopts a virtually verbatim copy of the State's proposed findings. *Wrinkles v. State,* 749 N.E.2d 1179, 1188 (Ind.2001), *cert. denied* (2002). We therefore decline to apply a modified standard of review.

■ We review ineffective assistance of trial counsel claims under the two-prong test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wieland,* 848 N.E.2d at 681. First, the petitioner must demonstrate that counsel's performance was deficient, which requires a showing that counsel's representation fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied* (2002). Second, the petitioner must demonstrate that he was prejudiced by the counsel's deficient performance. *Id.* To show prejudice, a petitioner must show that there is a reasonable probability that the outcome of the trial would have been different if counsel had not made the errors. *Id.* A probability is reasonable if it undermines confidence in the outcome. *Id.*

■ Maymon argues that his trial counsel was ineffective for failing to request a severance of his four burglary charges. He contends that he was entitled to the severance of these charges as a matter of right because they were joined for trial solely on the ground that they were of the same or similar character. We agree.

■ IC 35–34–1–9 states, in pertinent part:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

If the offenses are joined for a trial in the same indictment or information solely

upon the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. IC 35–34–1–11(a); *Waldon v. State*, 829 N.E.2d 168, 173 (Ind.Ct.App.2005), *trans. denied.* This right is automatic, and the trial court has no discretion to deny the defendant's motion for severance. *Wilkerson v. State*, 728 N.E.2d 239, 246 (Ind.Ct. App.2000). If, however, the offenses are joined as being part of a single scheme or plan, it is within the trial court's discretion to grant a severance when it is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense. *Waldon*, 829 N.E.2d at 173.

■ Here, the facts of each charge do not demonstrate that Maymon committed a series of connected acts or that the incidents were part of a single scheme or plan. Maymon was charged with committing four burglaries with four separate victims over a span of almost three months. The first charged burglary, which occurred in the mid-morning, was achieved by chiseling and breaking the locked back door. No one was home, and a piggy bank and pair of binoculars were taken. Two people in a blue Chevette were observed at the home. The second charged burglary occurred eleven days later, in the afternoon. Maymon did not enter the home, and nothing was taken because the victim confronted Maymon as he approached the front door. The victim saw a blue Chevette with two people inside, in the driveway. The third home was burglarized over two months later sometime between 10:30 a.m. and 1:30 p.m. A man was observed knocking on the door of the home and entering when no one was home. Various items were taken from the home, including a jar full of change, some DVDs and video games, baseball cards, cash, jewelry, a camera, and a camcorder. A red Chevette, identified as Maymon's, was seen at the home. The fourth charged burglary

occurred two days later, in the afternoon. Maymon attempted to enter the home through an unlocked door, but was confronted by the homeowner. Nothing was taken from this home. Maymon was observed driving a "red faded out smaller car." *Appellant's App.* at 152. We do not believe that the evidence showed that these crimes were connected together or constituted a single scheme or plan. Therefore, they were only joined together because they were of the same or similar character, and Maymon was entitled to severance of the charges as a matter of right. Maymon also argues that his trial counsel's performance was deficient and prejudiced him because the failure to move for a severance of the offenses allowed the evidence of the two burglaries where thefts occurred to be used as evidence of his intent to commit theft in the two burglaries where thefts did not occur. He contends that if a severance had been requested, the evidence of the burglaries where thefts occurred would not have been admissible in his trials for the burglaries where thefts did not occur under *Wickizer v. State*, 626 N.E.2d 795 (Ind.1993). We agree.

In *Wickizer*, our Supreme Court held that evidence of other crimes, wrongs, or acts may be admitted to prove the intent of the defendant only when he has alleged a particular contrary intent at trial. *Id.* at 799. The defendant must go beyond merely denying the charged culpability and must affirmatively present a claim of contrary intent through his opening statement, cross-examination, or own case-in-chief. *Id.* Here, the only evidence of his contrary intent was a pre-trial statement that Maymon made to the police. Although this statement was admitted at his trial, it was introduced by the State and not by Maymon, and no other evidence of contrary intent was presented. In *Iqbal v.*

*State*, this court concluded that a pre-trial statement alone was not sufficient to raise a claim of contrary intent when the defendant's trial counsel did not claim contrary intent during the trial, and therefore, evidence of prior bad acts was not admissible to prove intent because the defendant had not presented a particularized claim of contrary intent. 805 N.E.2d 401, 407 (Ind. Ct.App.2004).

Therefore, in this case, evidence of the two burglaries where thefts occurred would not be admissible at separate trials for the two burglaries where thefts did not occur. Trial counsel's failure to seek severance fell below an objective standard of reasonableness, and Maymon was prejudiced by his trial counsel's failure to move for severance of the burglary charges. The post-conviction court erred when it denied Maymon's petition for relief.[3] Because of this, we affirm Maymon's convictions for two counts of Class B felony burglary, which were the burglaries where thefts occurred, and reverse his convictions for two counts of Class A felony burglary, which were the burglaries where thefts did not occur. We remand with instructions to enter convictions for residential entry on these two convictions and to sentence Maymon accordingly.

Reversed.

DARDEN, J., and MATHIAS, J., concur.

---

**3.** In its denial of Maymon's petition, the post-conviction court relied on this court's opinion in Maymon's direct appeal for support that the evidence from the two burglaries where thefts occurred would have been admissible in trials for the burglaries where thefts did not occur to prove intent. Although our opinion did state that the burglaries where thefts occurred created an inference that Maymon's intent was to commit the felony of theft when he entered the homes involved in the other burglaries, *Appellant' App.* at 162–63, this did not determine the issue as to whether that evidence would be admissible in separate trials, but only whether sufficient evidence was presented to support Maymon's convictions during his previous trial on all four charges.