

**FILED**

Feb 25 2015, 9:31 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| David M. Payne<br>Ryan & Payne<br>Marion, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>George P. Sherman<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Gordon L. Peak, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 25, 2015<br><br>Court of Appeals Case No.<br>27A04-1406-CR-260<br><br>Appeal from the Grant Circuit Court.<br>The Honorable Mark E. Spitzer,<br>Judge.<br>Cause No. 27C01-1201-FD-12 |

**Sharpnack, Senior Judge**

## Statement of the Case

[1] Gordon L. Peak, Jr., was arrested after police stopped his car and found marijuana on his person. He appeals his conviction of possession of marijuana in excess of thirty grams, a Class D felony. Ind. Code § 35-48-4-11 (2011). We affirm.

# Issue

[2] Peak raises one issue, which we restate as: whether Peak received ineffective assistance of trial counsel.

# Facts and Procedural History

[3] On January 22, 2012, Sergeant Shawn Sizemore of the Marion Police Department was sitting in an unmarked car watching a house that was suspected of being used for illegal drug transactions. He saw someone in a silver Buick drive away from the residence and followed it. As Sergeant Sizemore followed the Buick, he saw the driver of the Buick stop at a red light, activate its right turn signal, and then turn right. He concluded that the driver of the Buick had committed an infraction by failing to use a turn signal for 200 feet prior to the turn. Sergeant Sizemore radioed Sergeant John Kauffman, identified the infraction he had observed, and asked him to stop the Buick.

[4] Sergeant Kauffman, who was in uniform and driving a marked car, stopped the Buick and walked up to it. Peak was driving, and he had no passengers. Before he began speaking with Peak, Sergeant Kauffman noticed "an overwhelming smell of raw, green marijuana." Tr. p. 108. Peak handed Sergeant Kauffman an identification card and conceded that his license was suspended. Sergeant Sizemore walked up to the car while Sergeant Kauffman spoke with Peak. Sergeant Kauffman told Sergeant Sizemore he smelled an odor of marijuana.

[5] Peak appeared to be nervous, would not make eye contact with Sergeant Kauffman, and kept his left hand between his seat and the car door. Sergeant

Kauffman asked Peak to get out of the car to make sure "he didn't have a weapon." *Id.* When Peak stepped out of the Buick, Sergeant Kauffman again smelled an odor of marijuana. Sergeant Sizemore also smelled an odor of marijuana, which he concluded was coming from Peak's person.

[6] Sergeant Kauffman had Peak walk to the rear of his car and put his hands on the car to facilitate a pat down. During the pat down, Peak kept his groin pressed up against the car so that Sergeant Kauffman could not reach it. Sergeant Kauffman turned Peak away from the car and patted Peak's groin area. He felt a substance which had "the same feel and consistency of packaged marijuana." *Id.* at 109. When he asked Peak what it was, Peak "admitted that he had marijuana on his possession." *Id.* at 110.

[7] The officers arrested him and took him to the police station, where they searched him and found a bag containing a green leafy substance in his underwear. They also advised Peak of his *Miranda* rights, and he signed a waiver of those rights. During a subsequent interview, he again admitted that the green leafy substance was marijuana. The officers performed a field test on the green leafy substance, and testing indicated that it was marijuana. They weighed the marijuana, and the scale indicated that the marijuana, plus the plastic bags it was packaged in, weighed thirty-nine point six grams. A subsequent weighing revealed that even without the plastic bags the marijuana still exceeded thirty grams in weight.

[8]   Sergeant Kauffman issued a written warning for failure to properly signal before a turn and issued a citation for driving with a suspended license. The State charged Peak with possession of marijuana in an amount greater than thirty grams.

[9]   Peak's counsel did not file a motion to suppress prior to trial. Instead, Peak filed a pro se motion for discovery and a pro se motion for hearing, asserting that the officers lacked probable cause to stop his car. Peak also filed a "Pro Se Motion to Compel Counsel to Investigate Criminal Case." Appellant's App. p. 42. Next, he and his counsel both signed a motion to continue the trial, asserting that Peak wanted additional discovery and wanted a new lawyer.

[10]   The trial court held a hearing on May 14, 2014, on the pending motions. At the hearing, Peak's counsel identified several differences of opinion between him and Peak regarding defense strategy. With respect to suppression of the marijuana, Peak's counsel told the court:

> The Defendant wants me to file a motion to suppress the alleged marijuana that was found on his person and we have discussed this on multiple occasions at some length, I am not aware of any legal theory that would require suppression of the evidence. He disagrees with me in regard to a number of my interpretations of the statute and case law. So he is of the opinion that he is entitled to suppress the marijuana because he believes that, uh, the stop was not justified. . . . Now I have discussed with the Defendant my unwillingness to do these things, which he wants me to do because I do not believe that they are justified under the law or the facts of this case.

Tr. p. 21.

[11] Counsel repeated, later in the hearing, that he had "explained [the suppression issue] to him in some detail." *Id.* at 25. The trial court and the parties discussed the discovery issues, but the court declined to appoint a new lawyer for Peak.

[12] The case was tried by jury. During the trial, Peak, by counsel, moved to suppress the marijuana, asserting that the officers should have obtained a search warrant after they smelled marijuana and Sergeant Kauffman felt it on Peak's person during the pat down. The trial court denied his motion. The jury determined that Peak was guilty, and the trial court sentenced him accordingly. This appeal followed.

## Discussion and Decision

[13] Peak argues that his trial counsel should have (1) filed a motion to suppress the marijuana prior to trial and (2) objected at trial to the admission of the marijuana, based on a challenge to the validity of the traffic stop. He further argues that the traffic stop that led to the discovery of the marijuana violated his federal and state constitutional protections against illegal search and seizure, and if his attorney had raised those constitutional claims, he would have prevailed.

[14] Claims of ineffective assistance of counsel are evaluated using the *Strickland* standard articulated by the United States Supreme Court. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). To establish ineffective assistance of counsel, a defendant must demonstrate two elements. *Id.*

First, a defendant must demonstrate that counsel performed deficiently based on prevailing professional norms. *Id.* We evaluate prevailing professional norms based on an objective standard of reasonableness. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009). Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Id.* at 906. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* A defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).

Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant. *Wilkes*, 984 N.E.2d at 1240. A defendant establishes prejudice by demonstrating a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Pruitt*, 903 N.E.2d at 906. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

We note that Peak brings his claim of ineffective assistance of trial counsel on direct appeal. Post-conviction proceedings are usually the preferred forum for adjudicating claims of ineffective assistance because presenting such claims often requires the development of new facts not present in the trial record. *Rogers v. State*, 897 N.E.2d 955, 964-65 (Ind. Ct. App. 2008), *trans. denied*. When a defendant presents a claim of ineffective assistance of trial counsel on direct appeal, the issue is foreclosed from collateral review. *Id.* at 965.

[18] Peak's claim of ineffective assistance of counsel is premised on his conclusion that the officers seized him in violation of the Fourth Amendment to the United States Constitution.[1] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[19] A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Croom v. State*, 996 N.E.2d 436, 440 (Ind. Ct. App. 2013), *trans. denied*.

[20] The Fourth Amendment generally prohibits a warrantless search or seizure unless a valid exception to the warrant requirement exists. *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013). A warrantless traffic stop and limited search is permissible where an officer has at least a reasonable suspicion that a traffic law has been violated. *Id.* The existence of reasonable suspicion is determined by looking at the totality of the circumstances to see whether the detaining officer has a particularized and objective basis for suspecting wrongdoing. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004). Reasonable suspicion must be more substantial than an officer's unparticularized suspicion or hunches. *Croom*, 996 N.E.2d at 440.

---

[1] Peak also claims that the traffic stop violated article I, section 11 of the Indiana Constitution, but he does not address that claim separately from his Fourth Amendment claim. His state constitutional claim is therefore waived. *See Klein v. State*, 698 N.E.2d 296, 299 (Ind. 1998).

[21] Here, the officers stopped Peak because he failed to display his turn signal for the required distance before making a right turn. Indiana Code section 9-21-8-25 (1991) provides:

> A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes.

[22] There is no dispute that Peak failed to signal for the required 200 feet before turning right. Instead, Peak argues that the statute does not apply here because he did not intend to turn right until he came to a stop at a red light and made the decision.

[23] When a statute is unambiguous, we must apply the plain and ordinary meaning of the language and not resort to other rules of construction. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). The plain language of Indiana Code section 9-21-8-25 provides that the requirement to signal is contingent upon an intention to turn. However, although Peak may have formed the intent to turn while stopped at the traffic light, that does not affect the result here. Peak might have raised a defense at trial that he lacked the intent to turn during the 200 feet, but the reasonable suspicion analysis looks at the totality of the circumstances leading up to a traffic stop to determine whether the officer had a particularized and objective basis for the stop. Failure to signal within the required distance is objective evidence of failure to comply with the statute. Thus, Peak's alleged

subjective lack of an intent would not preclude the officers from having an objective, reasonable suspicion that the turn signal law had been violated.

[24] Peak cites to *State v. Rhodes*, 950 N.E.2d 1261 (Ind. Ct. App. 2011), in support of his argument that he did not violate Indiana Code section 9-21-8-25. That case is factually distinguishable. There, the defendant turned left without activating his turn signal for 200 feet before turning. However, he argued, and a panel of this Court agreed, that compliance with the statute was not possible because the defendant had to pass a cross street before arriving at his turn, and the State failed to prove that there was at least 200 feet of street between where he entered the street and the place where he turned. *Id.* at 1265. In this case, Peak does not argue that compliance with the signaling requirement was impossible.

[25] Peak further claims that he did not violate the statute because he came to a stop at the red light, thus failing to travel continuously for the last 200 feet before turning. "The plain language of the statute requires that a vehicle must use a signal whenever it intends to turn or change lanes. There are no restrictions that it only applies in certain situations or on certain roadways." *Datzek v. State*, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005), *trans. denied*. Thus, the duty to signal not less than 200 feet before turning applies regardless of whether a stoplight or other traffic signal requires a complete stop before turning.

[26] Peak's arguments are without merit, and his violation of Indiana Code section 9-21-8-25 provided reasonable suspicion for the officers to detain Peak without

a warrant. *See Santana v. State*, 10 N.E.3d 76, 78 (Ind. Ct. App. 2014) (violation of signaling requirement provided reasonable suspicion). The officers did not violate the Fourth Amendment.

[27] If trial counsel had filed a motion to suppress the marijuana or had objected at trial to the admission of the marijuana on grounds that the traffic stop was illegal, counsel would not have prevailed. Counsel's performance is not deficient for failing to present a claim that would have been meritless. *Stowers v. State*, 657 N.E.2d 194, 200 (Ind. Ct. App. 1995), *trans. denied*. Peak has failed to carry his burden of demonstrating ineffective assistance of counsel.

[28] Peak also argues in passing that the admission of the marijuana at trial was fundamentally erroneous because the officers had no basis to conduct a traffic stop. Our Supreme Court has stated:

> A failure to object when the evidence is introduced at trial waives the issue for appeal. But a claim waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.

*Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (citations and quotation omitted).

[29] In this case, we have already determined that the officers' seizure of Peak did not violate the Fourth Amendment. There was thus no error, let alone fundamental error, in the admission of the marijuana at trial.

# Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

[32] Najam, J., and Bradford, J., concur.