## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2016, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Theodore Hannibal, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 29, 2016 <br><br> Court of Appeals Cause No. 34A02-1510-CR-1625 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable George A. Hopkins, Judge <br><br> Trial Court Cause No. 34D04-1404-FC-50 |

**Barnes, Judge.**

# Case Summary

[1] Theodore Hannibal appeals his convictions for Class C felony battery resulting in serious bodily injury, Class D felony battery resulting in bodily injury, and Class D felony resisting law enforcement. We affirm.

# Issue

[2] The sole restated issue is whether the trial court properly admitted evidence obtained as a result of the traffic stop.

# Facts

[3] On April 8, 2014, Kokomo Police Officer Roy Smith, who is a detective for the drug task force, observed Hannibal in a vehicle parked at a gas station in Howard County. Because Officer Smith and the other police officers who were with him at the time believed Hannibal had a suspended driver's license, they "called a patrol officer that was in the area and let them know that he was potentially driving." Tr. p. 67. Kokomo Police Officer Austin McClain, who was in a marked police vehicle and wearing a police uniform on that same date, "saw the vehicle Mr. Hannibal was known to drive pass in front of me . . . At this time, he had longer deadlocks [sic]. I could see all of that through the back window of the SUV that I knew him to drive." *Id.* at 25. Officer McClain had stopped Hannibal a week earlier and learned he had a suspended license.

[4] Officer McClain activated his lights, and Hannibal pulled over immediately. Officer McClain, who was alone, then approached the driver's side of Hannibal's vehicle, and Hannibal opened the door because his window did not

operate properly. Officer McClain observed Hannibal holding a lit cigarette in one hand and a cell phone in the other. Officer McClain instructed Hannibal to extinguish his cigarette, put away the phone, and exit the vehicle; Hannibal refused. Officer McClain repeated the instructions, and Hannibal refused again. "[Hannibal] said that he was going to call somebody and tell them that he was going to jail." *Id.* at 28.

[5] Officer McClain "could tell that the tensions were definitely rising," and he believed that, if the situation escalated, the cigarette could be a weapon and he did not want either himself or Hannibal to get burned. *Id.* Officer McClain "knocked [the cigarette] out of his hand . . . and then [] went for the cell phone." *Id.* Officer McClain does not like people to have cell phones during traffic stops because he does not want an "ambush situation" if the person calls other people and because he has learned cell phones can be a cover for stun guns. *Id.* at 29.

[6] By this time, Officer Alex Harper had arrived and was watching through the passenger-side window of Hannibal's vehicle. According to Officer Harper, Hannibal "appeared aggravated [and] agitated." *Id.* at 47. As Officer McClain reached for the cell phone, Hannibal lunged out of the vehicle at him. Officer McClain testified, "[Hannibal's] arms are moving forcefully and quickly enough that I, I cannot get ahold of both of them to place them, handcuffs around his hands . . . ." *Id.* at 31. As Officer McClain and Hannibal struggled, Officer Harper climbed through the passenger side of Hannibal's vehicle. Officer Harper attempted to detain Hannibal, but Hannibal was "flailing [and]

pushing away." *Id*. at 50. Neither officer was able to get Hannibal under control. As the officers struggled with Hannibal, the three fell to the ground. Officer Harper landed on his elbow, dislocating his shoulder. Officer McClain continued to struggle with Hannibal until several detectives observed the struggle and stopped to assist him.

[7] Officer Harper testified his dislocated shoulder caused him "the worst pain [he has] ever, ever felt. Almost unbearable." *Id.* at 53. He was unable to work for five or six weeks while he participated in physical therapy. Officer McClain suffered an abrasion on his knee.

[8] The State charged Hannibal with: (1) Class C felony battery resulting in serious bodily injury; (2) Class D felony battery resulting in bodily injury; (3) Class D felony resisting law enforcement; and (4) Class A misdemeanor driving while suspended. The State later amended the probable cause affidavit to include a count of Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance as Count V. Hannibal pled guilty to resisting law enforcement and driving while suspended, but the trial court granted his motion to withdraw the plea. On August 18 and 19, 2015, Hannibal was tried by a jury. The jury found him guilty of counts I, II, and III; the State dismissed counts IV and V. The trial court sentenced Hannibal to an aggregate sentence of seven years in the Department of Correction. Hannibal appeals his convictions.

# Analysis

[9] Hannibal contends the traffic stop was an unreasonable seizure that violated his rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Indiana Constitution. At the outset, we note that Hannibal merely cites to the general proposition that claims made under the Indiana Constitution are reviewed independently from claims made under the United States Constitution. He then "asks this Court to look at the totality of the circumstances surrounding his traffic stop on April 8, 2014." Appellant's Br. p. 9. He does not make an independent argument for his claim under our state constitution. Because Indiana Courts interpret and apply Article 1, Section 11 of the Indiana Constitution separately from its federal counterpart, Hannibal has waived that argument. *Francis v. State*, 764 N.E.2d 641, 646-47 (Ind. 2002).

[10] We next note that Hannibal failed to object at trial to the evidence he now argues was inadmissible. "A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal . . . ." *Brown v. State*, 929 N.E.2d 204, 206 (Ind. 2010). "[A] failure to timely object to the erroneous admission of evidence at trial will procedurally foreclose the raising of such error on appeal unless the admission constitutes fundamental error." *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015). Hannibal seems to acknowledge this by quoting the above-referenced general principle and refers to the right to be free from unreasonable search and seizure as a "fundamental" one. Tr. p. 7. However, he does not specifically argue the admission of the

evidence was fundamental error. Because Hannibal does not clearly contend the admission of evidence constituted fundamental error and does not make an argument supported by cogent reasoning or citations to any authority, we conclude he has waived the fundamental error argument, if indeed he ever intended to make that argument. *Pittman v. State*, 45 N.E.3d 805, 820-21 (Ind. Ct. App. 2015); Ind. Appellate Rule 46(A)(8).

[11] Waiver notwithstanding, we conclude the traffic stop does not run afoul of the Fourth Amendment to the United States Constitution. We review a trial court's ruling regarding the admissibility of evidence for an abuse of discretion. *Darringer v. State*, 46 N.E.3d 464, 469 (Ind. Ct. App. 2015). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Rutledge v. State*, 28 N.E.3d 281, 287 (Ind. Ct. App. 2015).

[12] The Fourth Amendment generally prohibits a warrantless search or seizure absent a valid exception to the warrant requirement. *Peak v. State*, 26 N.E.3d 1010, 1014 (Ind. Ct. App. 2015). A traffic stop is a seizure. *Id.* However, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014) (quotations omitted) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (2014)). "The existence of reasonable suspicion is determined by looking at the totality of the circumstances to see whether the detaining officer

has a particularized and objective basis for suspecting wrongdoing." *Peak*, 26 N.E.3d at 1015.

> *Terry* stops are limited in scope and purpose. Their purpose is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence . . . . Since reasonable suspicion is all that is necessary to support a *Terry* stop and it is a less demanding standard than probable cause . . . [t]he Fourth Amendment requires [only] some minimal level of objective justification for making the stop.

*Kellems v. State*, 842 N.E.2d 352, 355 (Ind. 2006) (alterations in original) (citations omitted) (quotations omitted), *re'hg granted on other grounds*. "Police officers may stop a vehicle when they observe minor traffic violations." *Santana v. State*, 10 N.E.3d 76, 78 (Ind. Ct. App. 2014).

[13] Officer McClain stopped Hannibal approximately a week before the stop at issue in this case and learned Hannibal's driver's license was suspended. Officer McClain was familiar with Hannibal's vehicle, Hannibal's appearance, and the status of Hannibal's driver's license. He initiated the traffic stop in this case based on that information, and we conclude that information was far more than the "minimal objective justification" required by the Fourth Amendment. *Id.* Even if, as Hannibal contends, he held a valid learner's permit,[1] the traffic stop was a reasonable course of action for Officer McClain to take in order to

---

[1] Hannibal concedes he was not accompanied by a related, licensed driver with valid driving privileges who was at least twenty-five years old. *See* Ind. Code § 9-24-7-4.

pursue his investigation of what he reasonably believed may have been criminal activity. Waiver notwithstanding, the trial court did not abuse its discretion by admitting the officers' testimonies regarding the events that transpired during the traffic stop.

## Conclusion

[14] Officer McClain had reasonable suspicion to support the traffic stop. The trial court did not abuse its discretion by admitting the evidence related to that stop. We affirm.

[15] Affirmed.

Vaidik, C.J., and Mathias, J., concur.