

FILED

Jun 23 2016, 7:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Trondo L. Humphrey, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | June 23, 2016 <br><br> Court of Appeals Case No. <br> 48A02-1508-PC-1238 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Cause No. <br> 48C03-1206-PC-19 |

**May, Judge.**

[1] Trondo L. Humphrey appeals the denial of his petition for post-conviction relief. As his trial counsel's assistance was ineffective and his petition is not barred by laches,[1] we reverse and remand.

# Facts and Procedural History

[2] Humphrey was convicted of murder in 1996. Our Indiana Supreme Court recited the facts of the crime:

> On the night of April 28-29, 1995, Benjamin Laughlin and Stephen Sites were driving around a neighborhood in Anderson looking for crack cocaine. Sites' account of events is summarized first. Sites was driving his truck. The two had been circling the same neighborhood for thirty to forty-five minutes when they saw three people in an alley. Believing the three to be drug dealers, Laughlin told Sites to pull into the alley. One of the three approached the truck on the passenger side and Laughlin asked the dealer to get in the cab to discuss a cocaine sale. As

---

[1] On cross-appeal, the State argued the post-conviction court erred when it did not find Humphrey's petition barred by laches. The State had raised laches at the post-conviction hearing, but the court's findings and conclusions did not address laches, only ineffective assistance. Those findings and conclusions were prepared and submitted by the State and the post-conviction court adopted them *verbatim*.

Post-Conviction Rule 1(6) requires the post-conviction court to make specific findings of fact and conclusions of law "on all issues presented," *Kelly v. State*, 952 N.E.2d 297, 301 (Ind. Ct. App. 2011), so the findings and conclusions should have addressed laches. Where the post-conviction court enters findings and conclusions, as it is required to do, we cannot affirm the judgment on any legal basis -- rather, we will affirm if the court's findings are sufficient to support the judgment. *Lile v. State*, 671 N.E.2d 1190, 1192 (Ind. Ct. App. 1996). The State does not in its cross-appeal acknowledge the *Lile* rule or offer explanation why we might be able to affirm based on laches despite that rule.

In an Order issued March 30, 2016, we directed the post-conviction court to issue amended findings and conclusions that addressed all issues presented, specifically laches. It did so on April 22, 2016, and it determined Humphrey's post-conviction petition was not barred by laches. As explained below, that was not error. It did not otherwise change its original order denying Humphrey's petition on the ground Humphrey's counsel was not ineffective, which we reverse.

Sites drove, Laughlin and the dealer quickly exchanged words, the dealer drew a gun, Laughlin grabbed it, and the gun discharged. Sites saw the barrel of the gun but did not see a "flash" because the dealer "had the gun pushed up against [Laughlin]." Record at 253. The single shot struck Laughlin in the abdomen and the dealer jumped out of the moving truck and ran away. Sites testified that the dealer was young, black, had short hair, and was about five feet ten inches tall. However, Sites was unable to provide a more precise identification of the dealer and also could not identify his two comrades waiting nearby. Sites estimated that the dealer was in the truck for thirty to forty seconds. Sites drove Laughlin to a nearby hospital where he eventually died from the wound. A forensic technician examined Sites' truck for fingerprints and blood spatters but was unable to recover any physical evidence or discernable fingerprints from the vehicle.

[3] Donnie Smith testified that he was drinking and smoking marijuana with [Humphrey] and Roosevelt Brooks on the night of the murder in Brooks' garage near the alley where the shooting occurred. The garage door was open so the three had access to the alley to sell drugs on the street. At some point a truck stopped outside the garage and [Humphrey] went outside to greet it, indicating to Smith that he believed the occupants were looking for cocaine. Smith heard the door of the truck open and close in the alley but testified that he did not hear any shots or actually see [Humphrey] approach or enter the truck. The truck then "peel[ed] out" and [Humphrey] returned to the garage, telling Smith that the "dude" tried to "gank him" or "get him." Record at 278. Smith saw only the back of the truck and could not testify to its color or whether it was the vehicle driven by Sites that evening. At some point prior to this incident, but not in the garage that night, Smith had seen [Humphrey] carrying a gun.

On June 16, 1995, Brooks, while in jail on an unrelated charge, gave an unsworn written statement to a police detective about the events of that night. According to the statement, Brooks was in his garage with someone he identified as [Humphrey] from a photographic lineup containing pictures of six black males. [Humphrey] went out to a blue truck with "white guys" inside, Brooks heard a "noise," and [Humphrey] returned soon thereafter, stating that he had shot one of the men. Record at 310. At trial, Brooks testified that he knew [Humphrey] but was not with him or Smith on the night of the shooting. Brooks repudiated the statement, which had been admitted to impeach the credibility of his courtroom version, and testified in essence that it was fabricated due to police pressure.

*Humphrey v. State*, 680 N.E.2d 836, 837-38 (Ind. 1997) (footnote omitted).

[5] In his direct appeal,[2] Humphrey argued the trial court abused its discretion when it admitted into evidence Brooks' statement regarding Humphrey's participation in the murder and erred when it did not admonish the jury to consider the statement for impeachment purposes only.[3] Our Indiana Supreme Court held Brooks' prior inconsistent statement was admissible for impeachment and, regarding the admonition, "had a proper objection been

---

[2] As noted above, the State submitted findings and conclusions that the post-conviction court adopted *verbatim*. One finding says: "On May 29, 1997, the Indiana Court of Appeals affirmed Humphrey's conviction." (App. at 79.) We did not. Humphrey appealed directly to the Indiana Supreme Court.

[3] Humphrey also argued the State did not present sufficient evidence he committed murder, the trial court abused its discretion when it did not admit an affidavit from Brooks, and the trial court abused its discretion when it admitted a photograph of the victim. Humphrey did not raise these issues in his petition for post-conviction relief, so we do not address them.

lodged to the instruction, the court would have been required to entertain it."
*Id.* at 840 (citation to the record omitted).

[6] On June 6, 2012, Humphrey filed a *pro se* petition for post-conviction relief and requested counsel. On March 14, 2014, Humphrey filed, via counsel, an amended petition for post-conviction relief, arguing his trial counsel was ineffective because 1) he did not object to the admission of Brooks' pre-trial statement on the correct grounds;[4] 2) he did not request an admonition based on the admission of Brooks' pre-trial statement; 3) he did not object to the court's final instruction on prior inconsistent statements; 4) he "erroneously endorsed," (App. at 29), the court's instruction regarding prior inconsistent statements; and 5) he did not tender a correct instruction on prior inconsistent statements.

[7] The post-conviction court held evidentiary hearings on Humphrey's petition on November 10, 2014, and December 22, 2014. On August 6, 2015, it denied Humphrey's petition, finding Humphrey's trial counsel was not ineffective.

# Discussion and Decision

---

[4] Counsel objected on foundational grounds, but not hearsay grounds. As our Indiana Supreme Court noted in Humphrey's direct appeal, the statement would have been admissible even if a hearsay objection had been successful. *Humphrey*, 680 N.E.2d at 839. We therefore need not address Humphrey's allegation of error premised on the nature of the objection.

Post-conviction proceedings are not "super appeals"; rather, they afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. *Id*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to its conclusions of law.[5] *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012). We may not reweigh the evidence or assess the credibility of the witnesses. *Id*. at 150.

---

[5]  In its brief, the State urges us to review the post-conviction court's judgment with "greater than usual deference," (State's Br. of Appellee at 14), because the same judge presided over Humphrey's trial and his post-conviction proceedings. It directs us to *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*, where we said "a post-conviction court's findings and judgment should be entitled to 'greater than usual deference' when the post-conviction judge is the same judge who conducted the original trial."

We decline to review this case with an enhanced level of deference because, as noted above, the post-conviction court adopted, *verbatim*, findings and conclusions the State submitted. Our Indiana Supreme Court noted in *Prowell v. State*, 741 N.E.2d 704, 708-09 (Ind. 2001), that:

> It is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority of our trial bench. For this reason, we do not prohibit the practice of adopting a party's proposed findings. But when this occurs, there is an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court.

In *Prowell*, most of the statements in the findings of fact and conclusions of law were correct "if viewed in isolation, but many are presented out of context and, as a result, are significantly misleading. We find some of the critical findings of the postconviction court to be clearly erroneous as that term is used in Trial Rule 52(A)." *Id*. at 709. We cannot in the case before us reconcile the "greater than usual deference" the State urges with the "inevitable erosion of the confidence of an appellate court that the [State-submitted] findings reflect the considered judgment" of Humphrey's post-conviction court. That is particularly true in this case because, as noted, there are omissions and findings of questionable factual and legal accuracy that have eroded our confidence.

# I.  Laches

Humphrey did not seek post-conviction relief until fifteen years after his direct appeal was decided.  The post-conviction court determined his petition was not barred by laches, and that was not clearly erroneous.

Because the State had the burden of proving laches as an affirmative defense, the applicable standard of review requires that we affirm unless we find the judgment clearly erroneous.  *Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind. 2001).  This is a review for sufficiency of evidence.  *Id*.  We will not reweigh evidence or assess credibility of witnesses.  Rather, we look only to the evidence and reasonable inferences favorable to the judgment, and we will affirm if there is probative evidence to support the post-conviction court's judgment.  *Id*.

"The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done."  *Id*.  "For laches to apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief *and* that the State is prejudiced by the delay."  *Id*. (emphasis added).

The post-conviction court determined "[t]he State did not present evidence on the unreasonable delay element."  (Findings of Fact and Conclusions of Law on Laches at 3.)  It heard testimony by Humphrey's appellate counsel that he never would have talked to Humphrey about post-conviction relief.  Counsel testified he did not raise ineffective assistance on direct appeal because "the

conventional wisdom" was that "you don't raise ineffectiveness of trial counsel on - - on a direct appeal." (Tr. at 33-34.) But counsel also said he was reluctant to raise ineffectiveness because he had been involved in a waiver hearing and "I would almost have been raising myself ineffective." (*Id.* at 34.)

[13] As there was no evidence Humphrey knew post-conviction remedies were available to him, we decline the State's invitation to find he was "on bright-lights notice about this issue and sat on [his] hands for a decade and a half." (Br. of Appellee at 16.) We acknowledge that the State need not

> supply direct proof of petitioner's knowledge. Circumstantial evidence is sufficient to show state of mind. Facts from which a reasonable finder of fact could infer petitioner's knowledge may support a finding of laches.
>
> * * * * *
>
> While the evidence in some cases has provided the proverbial "smoking gun" of actual knowledge of post-conviction remedies, no one factor is controlling. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge. The determination of sufficiency, of course, must be made by the trial court; if there is probative evidence to support its determination, we will affirm the trial court's judgment. The court is not obligated to infer knowledge from any particular set of circumstances, nor is it bound to accept petitioner's assertions of ignorance. The State must, however, present some objective facts from which the court may draw a reasonable inference of knowledge.

*Perry v. State*, 512 N.E.2d 841, 844-45 (Ind. 1987) (citation omitted), *reh'g denied.*

As there was probative evidence to permit a determination Humphrey did not know post-conviction remedies were available to him, the State did not prove Humphrey's delay was unreasonable.[6] Moreover, the post-conviction court expressly found the State's key witnesses were available to testify in the event of a retrial, and "[t]he State has not shown the passage of time has affected their memories or ability to testify at a retrial." (Findings of Fact and Conclusions of Law on Laches at 3.) In other words, the post-conviction court, after having considered the State's arguments and evidence, concluded the State had not met its burden to demonstrate prejudice as a result of Humphrey's delay. We cannot say that judgment is clearly erroneous. *See Armstrong*, 747 N.E.2d at 1120 (for laches to apply, the State must prove both unreasonable delay and prejudice from the delay). As we cannot find clear error, Humphrey's petition for post-conviction relief is not barred by laches.

## II.   Deficient Performance

To succeed on a claim of ineffective assistance of counsel, a petitioner must show not only that his trial counsel's representation fell below an objective standard of reasonableness, but also that counsel's errors were so serious as to deprive him of a fair trial because of a reasonable probability that, but for

---

[6] The State asserts Humphrey's fifteen-year delay in petitioning for post-conviction relief "was *per se* unreasonable." (Br. of Appellee at 11.) It offers no legal authority to support that assertion, and we decline to hold a fifteen-year delay is *per se* unreasonable. To the contrary, we have on many occasions explicitly stated "lapse of time does not *in and of itself* constitute laches," *e.g., Kindred v. State*, 514 N.E.2d 314, 317 (Ind. Ct. App. 1987) (emphasis added), *reh'g denied, trans. denied*. *Per se* means "[o]f, in, or by itself." *Black's Law Dictionary* 1162 (7th ed. 1999).

counsel's unprofessional errors, the result would have been different. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *reh'g denied, cert. denied*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*.

[16]     Humphrey's counsel was deficient for not asking that the jury be correctly instructed that Brooks' unsworn statement could be considered only for impeachment, for not objecting to the trial court's incorrect instruction, for not tendering a correct instruction, and for erroneously telling the jury in closing argument that the statement could be used in deciding whether Humphrey was guilty.[7]

[17]     Humphrey's argument is centered on the unsworn statement by Roosevelt Brooks to the effect he was with Humphrey the night of the shooting, Humphrey went to the truck Laughlin was riding in, Brooks heard a noise, and Humphrey returned and said he had shot one of the men in the truck. Brooks disavowed that statement at trial. While there was evidence Humphrey was at the scene when the victim was shot, Brooks' statement was the only evidence specifically identifying Humphrey as the shooter.

---

[7] Humphrey argues counsel was ineffective for other reasons. But as we find ineffectiveness based on the instructional errors and counsel's closing argument, we need not consider the other allegations of ineffectiveness.

## 1. *Instructional errors*

[18] The trial court admitted that hearsay statement but did not limit its use to impeachment. It instead erroneously instructed the jury it could consider the statement as substantive evidence of Humphrey's guilt. Our Indiana Supreme Court explained why Brooks' prior unsworn statement should not have been admitted as substantive evidence:

> [T]he statement was "classic hearsay" not ordinarily admissible as substantive evidence. The statement in question is clearly hearsay if offered to prove the facts contained because it was given out of court notwithstanding that Brooks was on the stand. This is precisely the point decided in *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), which overruled *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975). *Patterson* had held that out-of-court statements not given under oath could be considered as substantive evidence so long as the declarant was available for cross-examination at trial concerning the statement. In its place, *Modesitt* adopted Federal Rule of Evidence 801(d)(1) as the law of Indiana. The Indiana Rules of Evidence have since been adopted, and accomplish by Rule what *Modesitt* did by decision. Indiana Evidence Rule 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]" Because the prior statement was not under oath, it was not admissible under this Rule or any other. It was, however, admissible to impeach Brooks.

*Humphrey,* 680 N.E.2d at 838-39. But the *Humphrey* Court determined on direct appeal that Humphrey had waived his argument that the jury was wrongly allowed to consider the statement as substantive evidence. *Id*. at 840.

[19] In its final instructions to the jury, Humphrey's trial court gave an erroneous "unlimiting" instruction, telling jurors they were free to consider a prior inconsistent statement both to impeach and as substantive evidence bearing on Humphrey's guilt or innocence. That instruction "misstated the current law and instructed the jury that it could consider as substantive evidence an important piece of evidence that was admissible only for impeachment." *Id.* Humphrey did not object to the instruction. The trial court explicitly asked Humphrey's counsel if he had any objection to the proposed instructions and counsel answered in the negative. Nor did Humphrey's counsel tender a correct instruction. Counsel's failure to object to or correct the court's instructional error was below the standard reasonably expected of counsel.

## 2. *Closing argument*

[20] Not only did counsel decline to object to an instruction that misstated the law and erroneously told the jury that it could consider Brooks' statement as substantive evidence, in his closing argument he misstated the law in the same way the jury instruction did. Counsel told the jury it could "consider the out-of-court statements as evidence in determining the guilt or innocence of [Humphrey] for the crime charged. That's the law, plain and simple. That's the instructions. You have to follow what . . . follow what you're presented." (Trial R. at 488-89).

As explained above, that was wrong and counsel incorrectly told the jury it could consider highly damaging evidence against Humphrey to determine whether he was guilty. The jury should have been told it could consider Brooks' statement identifying Humphrey as the shooter only to determine whether Brooks was credible. Counsel was deficient for making the same erroneous statement of law as did the trial court in its instructions.

### 3.  Trial strategy

Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. *Id*. at 746-47. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. at 747. On appeal, we do not second guess counsel's strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *Elisea v. State*, 777 N.E.2d 46, 50 (Ind. Ct. App. 2002).

Trial strategy is not subject to attack through an ineffective assistance of counsel claim unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). This was. If the decisions by Humphrey's counsel were, as the State argues, part of a "strategy," we hold a strategy premised on allowing and making erroneous statements of law that improperly permit a jury to consider as substantive evidence of a client's guilt a statement that was admissible only for impeachment is a strategy "so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Id*. *And see Roark v. State*, 573

N.E.2d 881, 883 (Ind. 1991) (noting on appeal "apparent inadequacy of counsel's performance at trial" for failure to tender a complete instruction on voluntary manslaughter). We decline the State's invitation to characterize as "strategic" counsel's apparent acquiescence to an erroneous jury instruction and counsel's own endorsement in final argument of a misstatement of law that permitted the jury to consider highly damaging evidence against his client for an improper purpose.

[24] Our Indiana Supreme Court addressed failure to correct an erroneous statement of law in *Baer v. State*, 942 N.E.2d 80, 99-100 (Ind. 2011), *reh'g denied*. Baer argued counsel was ineffective for declining to object to misstatements of law the prosecutor made. Our Supreme Court disagreed:

> It seems likely that defense counsel consciously chose not to object to the prosecutor's misstatements as part of their general strategy of letting the prosecutor discredit himself. At PCR, [Counsel] testified that he . . . knew [the prosecutor] was capable of overstating his case to the jury. Trial counsel planned to correctly state the law to the jury when it was their turn, have the judge echo their statement of the law through the jury instructions, and hope the jury would decide from the contrast that the prosecutor was not credible.
>
> Consistent with this approach, defense counsel correctly stated the law in closing argument. . . . And the court's instructions correctly stated the law and made it clear that they took precedence over arguments by counsel on what the law was. It was not deficient for [appellate counsel] to take a pass on this potential claim.

*Id.*

[25] In the case before us, by contrast, Humphrey's counsel did not correctly state the law in closing argument, nor did the trial court in its jury instructions. We cannot say permitting and repeating an incorrect statement of law that told the jury it could consider damaging evidence against Humphrey for an improper purpose represented a reasonable trial strategy. Counsel's performance was deficient.

## III. Prejudice

[26] To succeed on a claim of ineffective assistance of counsel, a petitioner must show counsel's errors were so serious as to deprive him of a fair trial because of a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.[8] *Overstreet v. State*, 877 N.E.2d 144, 152 (Ind. 2007),

---

[8] This is sometimes referred to as the "prejudice" prong of the ineffective assistance analysis. *Segura v. State*, 749 N.E.2d 496, 501 (Ind. 2001). We must address the erroneous standard for prejudice the State presented to the post-conviction court and the court adopted.

The court concluded Humphrey "presented no evidence of an error by trial counsel *so egregious that in all probability that error caused* Humphrey's conviction." (App. at 82) (emphasis added). The court erred to the extent it required Humphrey to meet that standard to show prejudice, and we admonish the State to refrain from inaccurately characterizing the controlling law in findings and conclusions it submits.

The standard for demonstrating prejudice is: "A defendant establishes prejudice by demonstrating *a reasonable probability* that, but for counsel's deficient performance, the result of the proceeding would have been different." *Peak v. State*, 26 N.E.3d 1010, 1014 (Ind. Ct. App. 2015) (emphasis added). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

As explained elsewhere in this decision, our confidence in this post-conviction order has been undermined in light of numerous errors in the court's findings and conclusions. The language Humphrey's post-conviction court used, which would require a showing of error by trial counsel "so egregious that in all probability that error caused" the conviction, is not found in any reported Indiana decision. It does appear in one unreported decision, in the form of a conclusion of law entered in a post-conviction case decided in the same court as was Humphrey's, but by a different judge. *Winbush v. State*, No. 48A02-1401-PC-32, 2014 WL 4101667 (Ind.

*cert. denied.* Humphrey was prejudiced by the admission, as substantive evidence, of Brooks' statement.

[27] On direct appeal, our Supreme Court characterized the evidence against Humphrey as "extremely thin":

> Although Brooks' prior inconsistent statement could have been precluded from consideration as substantive evidence for the reasons explained, Humphrey's failure to object on hearsay grounds or request a limiting instruction allowed the jury to consider the statement in deciding Humphrey's culpability. Indeed, the instructions explicitly permitted jurors to consider it as substantive evidence under the now disapproved *Patterson* rule.
>
> * * * * *
>
> Humphrey contends that in the absence of Brooks' out-of-court statement naming him as the assailant, there is no evidence tying him to Laughlin's murder. Identity is indeed the crucial evidentiary issue here. The State's case was wholly circumstantial and would have been extremely thin if Brooks' statement had not been before the jury as substantive evidence. No physical evidence linked the defendant to the crime and the State's case hinged on the testimony of reluctant witnesses who contradicted their own pretrial statements about Humphrey's possible involvement.

*Humphrey*, 680 N.E.2d at 840-41.

---

Ct. App. Aug. 20, 2014), *trans. denied.* That decision does not indicate whether the post-conviction judge adopted *verbatim* findings and conclusions that the State submitted and that included the incorrect standard.

Humphrey was prejudiced because Brooks' statement, which was the only evidence that specifically identified Humphrey as the shooter in a case where "[i]dentity is . . . the crucial evidentiary issue," should not have been admitted as substantive evidence of his guilt. In *Maymon v. State*, 870 N.E.2d 523, 528 (Ind. Ct. App. 2007), *on reh'g*, 875 N.E.2d 375 (Ind. Ct. App. 2007), *trans. denied*, we held Maymon was prejudiced by counsel's ineffective assistance where counsel did not request severance as of right of four counts of burglary. The only evidence of Maymon's intent to commit theft in two of the burglaries was the fact that in the other two burglaries he had also committed theft. Because the evidence of the two burglaries where theft did occur would have been inadmissible at separate trials for the two burglaries where thefts did not occur, Maymon was prejudiced by his trial counsel's failure to move for severance of the burglary charges. *Id*. at 529. Similarly, in this case, counsel did not submit a correct instruction or object to the court's instruction, and incorrectly told the jury it could consider Brooks' statement in determining Humphrey's guilt or innocence. Humphrey was prejudiced by counsel's errors that allowed the jury to consider as substantive evidence the only evidence that identified Humphrey as the shooter.

## Conclusion

As Humphrey's counsel's performance was deficient and the deficiencies prejudiced Humphrey, we reverse the denial of Humphrey's petition for post-conviction relief and remand for a new trial.

[30]     Reversed and remanded.

Najam, J., and Riley, J., concur.