**Bryson MATTHEWS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A05–0608–CR–468.

Court of Appeals of Indiana.

May 23, 2007.

---

C. Robert Rittman, Grant County Public Defender, Marion, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Bryson Matthews ("Matthews") appeals his convictions for Murder,[1] and Attempted Murder.[2] We affirm.

### Issues

Matthews presents two issues for review:

I. Whether the trial court admitted evidence in violation of Indiana Evidence Rule 404(b); and

II. Whether there is fundamental error in the trial court's instructions related to accomplice liability.

### Discussion and Decision

Matthews was a friend of Nojir Jeffries ("Jeffries") and often drove Jeffries around because Jeffries had no driver's license. On September 27, 2000, Jeffries was at the Dice House in Marion, Indiana when Michael White ("White") confronted Jeffries and accused him of breaking into White's home. White rammed Jeffries' head through the drywall and threatened him with a gun. Jeffries was able to flee.

As he was coming out of the Dice House, Jeffries encountered Lance Cannon ("Cannon"). Jeffries explained he had "got into a fight and needed a gun." (Tr. 635.) Cannon refused to provide Jeffries with a

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code §§ 35–41–5–1, 35–42–1–1.

gun. However, later that evening, Matthews came to Cannon's home and purchased a .38 caliber handgun in exchange for $60.00 and two "eight balls" of cocaine. (Tr. 638.) Because Cannon was not a drug dealer, and was hesitant to accept cocaine as payment, Matthews arranged to send two buyers for the cocaine. (Tr. 659.)

On September 29, 2000, Jeffries, Matthews, Treymaine Hobson ("Hobson") and Odell Cobb ("Cobb") were en route to a party, with Matthews driving, when they saw White pull into a gas station. Jeffries told Matthews to "pull in there" and Matthews complied. (Tr. 561.) Hobson urged Jeffries, "Don't do that, up here at this gas station like that." (Tr. 562.) Cobb said, "Don't do it." (Tr. 571.) White's vehicle, in which Rodney Duckworth ("Duckworth") was a passenger, left the gas station.

Matthews left the gas station and drove behind White's vehicle, first using his bright lights and then turning off his headlights. Matthews drove alongside White's vehicle, urging Jeffries, "shoot that nigger, shoot that nigger." (Tr. 362.) Jeffries rolled down his passenger window, leaned out the car and fired multiple shots at White's vehicle. One shot struck Duckworth in the head, fatally wounding him. A second shot struck White in his wrist.

During the summer of 2004, Matthews was at a Fort Wayne club when he met Alicia Moore ("Moore") and tried to convince her to follow him to a party. Matthews insisted that he knew some of the people that Moore knew in Marion. Matthews then claimed to be Jeffries' cousin and said, "I'm the one that killed Rodney." (Tr. 408.) Later that evening, Matthews warned Marquita Thomas ("Thomas") to tell her friend "to keep her mouth shut." (Tr. 425.) Moore and Thomas left the club and pretended to follow Matthews to a party. When Thomas suddenly turned her van around in the middle of the road, Matthews followed and fired several shots.

Eventually, Cobb gave a statement to Marion Police Detective Tom Myers implicating Matthews and Jeffries in Duckworth's murder. On June 10, 2005, the State charged Matthews and Jeffries with Murder and Attempted Murder. On January 30, 2006, Jeffries pled guilty to the murder of Duckworth and the attempted murder of White, and admitted that he had fired the shots. On March 13, 2006, Matthews was brought to trial as an accomplice. On March 17, 2006, the jury convicted him as charged. On May 6, 2006, Matthews was sentenced to sixty-five years for murder and fifty-five years for attempted murder, to be served concurrently. He now appeals.

**Discussion and Decision**

*I. 404(b) Evidence*

Matthews contends that the trial court admitted evidence in violation of Indiana Evidence Rule 404(b) when Moore and Thomas testified that Matthews claimed to have killed Duckworth, advised Thomas to keep her friend quiet, and fired shots at or near their van.

The admission of evidence of uncharged bad conduct is constrained by Indiana Rule of Evidence 404(b), which provides in relevant part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Evidence of extrinsic offenses poses the danger that the jury will convict the defendant because he is a person of bad character generally, or has a tendency

to commit crimes. *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003). The rationale for the prohibition against bad act and character evidence is "predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed." *Oldham v. State*, 779 N.E.2d 1162, 1173 (Ind.Ct.App. 2002), *trans. denied.*

■ To decide whether character evidence is admissible under Evid. R. 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs or acts is relevant to a matter at issue other than the person's propensity to engage in a wrongful act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Bassett*, 795 N.E.2d at 1053.

■ The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission, and the trial court's ruling will be reviewed only for an abuse of discretion. *Larry v. State*, 716 N.E.2d 79, 81 (Ind.Ct.App.1999). A decision by the trial court to admit evidence will be reversed only upon a showing of a manifest abuse of discretion that resulted in the denial of a fair trial. *Id.* at 80.

■ At the outset, we observe that Matthews' confession to Moore is not an extrinsic offense. Rather, his intimidating actions once he admitted his involvement in Duckworth's death are the extrinsic offenses at issue. Threats by the accused against prosecution witnesses are considered attempts to conceal or suppress implicating evidence and are "relevant and admissible into evidence." *Johnson v. State*, 472 N.E.2d 892, 910 (Ind.1985). Such threats are viewed as admissions of guilt

and therefore are relevant to demonstrate an accused's guilty knowledge. Accordingly, evidence of Matthews' threatening and intimidating actions against Thomas and Moore were admissible for a purpose other than to merely show his propensity to engage in wrongful acts. Matthews has demonstrated no manifest abuse of discretion to support reversal on Evidence Rule 404(b) grounds.

## II. *Jury Instruction*

■ Matthews next argues that the trial court erroneously instructed the jury with regard to accomplice liability. Because he did not object at trial, he couches his argument in terms of "fundamental error." To be deemed fundamental, an error must be a substantial and blatant violation of basic principles that renders a trial unfair to a defendant. *Turner v. State*, 755 N.E.2d 194, 199 (Ind.Ct.App. 2001), *trans. denied.*

■ Matthews challenges the trial court's instruction on the elements of Murder, alleging that it should have specified Duckworth as the intended murder victim. However, his argument and citation to authority with regard to fundamental error involve instruction on the requisite specific intent to kill to support an attempted murder conviction. As best we can discern Matthews' claims, he believes that the jury should have been instructed that he must have formed a specific intent to kill and that the doctrine of transferred intent cannot be applied to him as an accomplice to murder.[3]

■ A conviction for attempted murder requires proof of specific intent to kill. *Taylor v. State*, 840 N.E.2d 324, 342 n. 3 (Ind.2006). In order to convict a

---

**3.** The doctrine of transferred intent is applicable to a situation where a person intends to kill one victim and acts toward that end, but through mistake or inadvertence kills an unintended victim. *See Cheney v. State*, 486 N.E.2d 508 (Ind.1985).

defendant of aiding an attempted murder, the State must prove that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder and also that the actual perpetrator, acting with the specific intent to kill, took a substantial step toward the commission of murder. *Id.*

Due process requires the State to prove every element of an offense beyond a reasonable doubt. *Specht v. State,* 838 N.E.2d 1081, 1087 (Ind.Ct.App.2005), *trans. denied* (citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). A trial court commits fundamental error when it fails to instruct the jury that in order to find an accomplice guilty of attempted murder, the jury must find that the accomplice possessed the specific intent to kill when he knowingly or intentionally aided, induced or caused the principal to commit the crime of attempted murder. *Id.* at 1089. Such error is commonly referred to as *"Spradlin* error." *See Spradlin v. State,* 569 N.E.2d 948 (Ind. 1991). Jury instructions must be considered as a whole and not in isolation. *Edgecomb v. State,* 673 N.E.2d 1185, 1196 (Ind.1996), *reh'g denied.*

Here, Final Instruction 5 contained the following language:

> Before you may convict the Defendant of Count II [attempted murder] the State must have proved each of the following elements beyond a reasonable doubt:
>
> (1) the defendant
>
> (2) knowingly or intentionally
>
> (3) aided, induced or caused Nojir Jeffries when Nojir Jeffries was engaged ·

> (4) in conduct that constituted a substantial [step] toward killing Michael White
>
> (5) and *both Defendant and Nojir Jeffries acted with a specific intent to kill Michael White.*

(App.25–26) (emphasis added). Thus, the jury was correctly instructed on specific intent to kill on the part of both the principal and the accomplice. To the extent that Matthews apparently also attempts to argue that he is not responsible for the same act of murder as the principal where the actual victim was unintended, and the doctrine of transferred intent is operative, Matthews has waived the argument for his failure to cite to relevant authority. *See* Ind. Appellate Rule 46(8)(a).

We find no fundamental error in the trial court's instruction to the jury on accomplice liability.

### Conclusion

Matthews has demonstrated no manifest abuse in the admission of evidence, nor has he demonstrated fundamental error in the jury instructions.

Affirmed.

SHARPNACK, J., and MAY, J., concur.