**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 30 2012, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRETT A. HEAD-MATTINGLY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A05-1103-CR-127 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1009-FB-1136

**April 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Brett Head-Mattingly appeals his convictions of Class B felony attempted burglary,[1] Class B felony burglary,[2] and Class D felony theft.[3] He asserts: (1) the trial court erred by denying his motion to sever the charges for trial; and (2) the trial court abused its discretion by admitting into evidence three letters that Head-Mattingly sent to his juvenile accomplice while he was in jail awaiting trial. We affirm.[4]

## FACTS AND PROCEDURAL HISTORY

On September 25, 2010, Head-Mattingly and a female juvenile accomplice, A.B., knocked on the front door of a house to see if anyone was home. When no one answered the door, the two walked around to the back of the house, where A.B. attempted to open a window to break into the house. When she could not, Head-Mattingly kicked in the back door. Head-Mattingly and A.B. planned to enter the house, but were detected by a neighbor, so they walked away from the house. The neighbor followed them and called the police. The police arrived and detained A.B. and Head-Mattingly.

A.B. admitted Head-Mattingly kicked open the door because they intended to steal from the house. A.B. also told police that she and Head-Mattingly stole a number of items from a house they broke into one day earlier. Police found A.B.'s prints at the scene of that burglary and, when they interviewed a neighbor, he reported seeing two people in the woods behind the burglarized house around the time of the burglary. Police showed a photo line-up

---

[1] Ind. Code § 35-43-2-1 (burglary); Ind. Code § 35-41-5-1 (attempt).
[2] Ind. Code § 35-43-2-1.
[3] Ind. Code § 35-43-4-2.
[4] We held oral argument on this case at the University of Evansville. We thank the University for its hospitality and counsel for their thoughtful and well-presented arguments.

to the neighbor, and he identified Head-Mattingly as one of the people in the woods around the time of the burglary.

The State charged Head-Mattingly with attempted burglary for the incident on September 25, and with burglary and theft for the home invasion on September 24. Before trial, Head-Mattingly requested the trial court sever his charges, so he would receive separate trials for the crimes committed on separate dates. The trial court denied that motion.

While in jail awaiting trial, Head-Mattingly sent three letters to A.B. in which he generally expressed his desire to avoid going to prison, reminded her that she would not go to prison because she was a juvenile, and essentially asked her to take all the blame while exonerating him. At trial, the State offered these letters for admission into evidence, and Head-Mattingly objected. The trial court overruled his objection and admitted the letters.

A.B. testified at trial to the facts as stated above. A jury found Head-Mattingly guilty of all three charges. The court sentenced Head-Mattingly to concurrent sentences of fifteen years for attempted burglary, fifteen years for burglary, and two years for the theft.

## DISCUSSION AND DECISION

1. <u>Severance of Charges</u>

Head-Mattingly asserts the trial court erred by denying his request to sever the charge for the act allegedly committed on September 25 from the charges for the acts allegedly committed on September 24.

Indiana law provides:

Two or more offenses can be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or
(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a). Head-Mattingly concedes his crimes were of the same or similar character, such that the State initially could join together the charges for the acts committed on two separate days.

However, "[w]henever two (2) or more offenses have been joined for trial in the same indictment or information *solely* on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a) (emphasis added). As the statute indicates, severance is required as a matter of right if the charges were joined *only* because they were of the same or a similar character; thus, a trial court does not have discretion to deny a defendant's request for severance if the offenses were joined only for that reason. *Jackson v. State*, 938 N.E.2d 29, 35-36 (Ind. Ct. App. 2010), *trans. denied*.

Head-Mattingly asserts his charges were joined *only* because they were "of the same or similar character," Ind. Code § 35-34-1-9(a)(1), such that he had "a right to a severance of the offenses." Ind. Code § 35-34-1-11(a). The State claims Head-Mattingly's charges were also joined because they were "a series of acts connected together," Ind. Code § 35-34-1-9(a)(2), such that Head-Mattingly was not entitled to severance as a matter of right.

We find the facts herein similar to those in *Waldon v. State*, 829 N.E.2d 168 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. There, Waldon met juvenile accomplices at night to

4

burglarize businesses. While one juvenile waited in the vehicle, Waldon pried open the doors to businesses, and then he and another juvenile would enter to take money or other small items. During the crimes, the accomplices communicated over walkie-talkies, and the burglaries all occurred within a few days. Based on that evidence, we held "the actions show a series of acts which constitute parts of a single scheme or plan with the motive to steal money. Consequently, severance was not available as a matter of right but instead was a matter within the discretion of the trial court." *Id.* at 175.

On two consecutive days, Head-Mattingly and A.B. walked through neighborhoods looking for unoccupied houses to enter so they could steal small valuables. Each time they intended to enter the back of the house after breaking a window to open the door. Because the acts were part of a single plan to steal money from unoccupied homes, Head-Mattingly was not entitled to severance as a matter of right.[5] *See id.*

2.      Admission of Evidence

Head-Mattingly asserts the court abused its discretion by admitting into evidence the three letters he sent to A.B. while he was in jail awaiting trial. A trial court has discretion to

---

[5] When severance is not required as a matter of right, severance becomes a decision left to the discretion of the trial court. *Jackson*, 938 N.E.2d at 37. As Ind. Code § 35-34-1-11(a) explains,

> the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Head-Mattingly has not asserted the trial court abused its discretion in denying his motion to sever. Rather, his entire argument rests on his assertion that severance was required as a matter of right because his crimes did not demonstrate a distinctive *modus operandi*. Because he has made no such argument, we need not review whether the denial of severance was an abuse of discretion based on those three factors.

5

admit or exclude evidence, and we reverse its decision only for "a manifest abuse of discretion that resulted in the denial of a fair trial." *Matthews v. State*, 866 N.E.2d 821, 825 (Ind. Ct. App. 2007), *trans. denied*.

Head-Mattingly claims the letters contained evidence of uncharged bad conduct, the admission of which is prohibited by Indiana Rule of Evidence 404, which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The purpose of Evidence Rule 404(b) is to prevent a defendant from being convicted because of his "bad character generally" or his "tendency to commit crimes." *See Matthews*, 866 N.E.2d at 824-25. To determine whether alleged character evidence is admissible under Rule 404(b), a trial court must (1) decide whether the alleged evidence of other crimes, wrongs, or acts was relevant to a matter at issue other than the person's propensity to engage in a wrongful act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403.[6] *Id.* at 825.

In the letters at issue, Head-Mattingly generally expressed his desire to avoid going to prison, reminded A.B. that she would not go to prison because she was a juvenile, and asked A.B. to tell police that, on September 25, she broke in the door alone and he had nothing to

---

[6] Indiana Evidence Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

do with it. In a second letter, he referred to the two of them as "Bonnie & Clyde." (State's

Ex. 24.) In a third letter, he continued pleading for her help:

> Listen, you got my life in your hands. They gonna believe everything you say at my trial date. [redacted by trial court] Please think about all this. If you don't testify, they gonna try to threaten you and all that, but you aint gonna be in shit compared to me, so think about that. I didnt ever tell on you or none of that. They just tryin to get you to turn against me. [A.B.], I love you. [redacted by trial court] . . . I hope you still gonna ride this out with me. I still read your letters that you wrote me when I first got here. I hope everything works out for the both of us. They tryin to get me on all kinds of shit that I aint even do. I need you baby. Help me.

(State's Ex. 26) (errors in original).

Contrary to Head-Mattingly's assertion, his statements in those letters are not extrinsic

evidence of *other* crimes, wrongs, or acts. Rather, he is requesting that A.B. take the blame,

because she would be punished less severely as a juvenile, for the crimes for which he was

being tried. Thus, Evidence Rule 404(b) did not prohibit the admission of Head-Mattingly's

letters to A.B.[7] *See*, *e.g.*, *Matthews*, 866 N.E.2d at 825 (evidence of threats the defendant

made toward prosecution witnesses after defendant admitted his involvement in a murder are

not extrinsic character evidence, rather the threats are attempts to conceal or suppress

implicating evidence and are admissible).

---

[7] Moreover, as the State notes, if the admission of the letters had been erroneous, the probability that Head-Mattingly was harmed by the admission thereof appears slight in comparison to the evidence presented against him, which included testimony that a neighbor of each burglarized residence identified Head-Mattingly as being near the relevant scene around the time of the relevant crime and A.B.'s testimony that Head-Mattingly was at the scene of each crime and that he intended to steal from each residence. We do not reverse harmless errors. *See* Ind. Appellate Rule 66 ("No error . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

**CONCLUSION**

Because Head-Mattingly has not demonstrated he was entitled to severance of his charges as a matter of right or to exclusion of the letters he wrote to his accomplice, he has not demonstrated error that would justify overturning his convictions. Accordingly we affirm.

Affirmed.

RILEY, J., and BROWN, J., concur.