# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 27 2017, 10:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Nicole Rutter-Hirth
Rion, Rion & Rion, LPA, Inc.
Dayton, Ohio

Jennifer Lukemeyer
Voyles, Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Todd Stigleman, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 27, 2017 <br><br> Court of Appeals Case No. <br> 89A01-1608-CR-1783 <br><br> Appeal from the Wayne Superior Court <br><br> The Honorable Charles Todd, Judge <br><br> Trial Court Cause No. <br> 89D01-1405-FA-11 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Todd Stigleman was convicted of four counts of kidnapping as Class A felonies, eight counts of criminal confinement as Class C felonies, and two counts of stalking as Class C felonies. Todd also admitted to being an habitual offender. The trial court later vacated all convictions of criminal confinement and sentenced Todd to seventy-six years in the Indiana Department of Correction. Todd now appeals, raising three issues for our review: (1) whether the trial court abused its discretion in denying Todd's motion to sever, (2) whether the trial court abused its discretion in admitting evidence, and (3) whether his sentence is inappropriate in light of the nature of the offenses and his character. Concluding the trial court did not abuse its discretion in denying Todd's motion to sever or in admitting evidence and that Todd's sentence is not inappropriate, we affirm his conviction and sentence.

# Facts and Procedural History[1]

[2] Todd and Kelli Stigleman were married in 2004 and had one child, Joshua, during their relationship. Kelli has another son, Joseph, from a prior relationship. Kelli has worked for Cracker Barrel for sixteen years; Todd did not work during their marriage, but received social security disability payments. Todd and Kelli lived together in their marital residence in Cambridge City,

---

[1] We held oral argument at Valparaiso University Law School on April 7, 2017. We thank counsel for their oral advocacy and extend our appreciation to the faculty, staff, and students for their hospitality.

Indiana, which Kelli purchased from her parents pursuant to an installment contract.

[3] In early February of 2014, Kelli left Todd and moved in with her parents. She offered Josh the option to live with her at her parents' house, but he declined because he wished to live with his father. Josh was homeschooled and very close to his father. Shortly after Kelli left, Todd attempted to reconcile their relationship several times, but with no luck. On February 21, 2014, Todd filed for divorce in the Wayne County Superior Court. Thereafter, events quickly escalated.

[4] In March of 2014, Kelli filed an emergency motion to amend the parties' provisional orders seeking to stop Todd from contacting her, as he had started "harassing [her], [making] several phone calls to [her] cell phone, to [her] parents' house, to [her] work and just was non-stop showing up everywhere [she] seemed to be . . . ." Transcript, Volume II at 69. The trial court granted Kelli's motion and ordered parenting time exchanges with Josh to occur at the Cambridge City Police Station.

[5] On March 19, 2014, Kelli attended an appointment at the Wayne County Health Department after work. While she was filling out paperwork following her appointment, Josh unexpectedly appeared at the Health Department. Kelli and Todd were supposed to have a parenting time exchange that evening and she thought it strange Josh showed up at that time. Josh asked Kelli for the keys to her van so he could wait outside, and she complied. As she walked to

her van, she saw Todd walking toward her. Todd grabbed her arm and pushed her into her van and said, "we're going to talk." *Id.* at 74. Kelli resisted and said she would take Josh and leave, and Todd responded, "no, we're going to talk." *Id.* Todd pushed Kelli into the passenger's seat, started the car, and drove to their marital residence in Cambridge City. Josh was on his cellphone in the backseat and it appeared to Kelli that he was giving someone directions to follow the van. The lock on the passenger door was broken at the time, so Kelli could not escape. At the marital residence, Todd took Kelli's phone and kept her keys. He told her, "I'm sorry, I want you to come back, why are you doing this to me, I don't understand why you're doing this . . . ." *Id.* at 77. At one point while Kelli was sitting on the couch, she reiterated her position she did not want to talk to him. Todd became very upset and towered over her while wielding a knife. He pushed her back onto the couch, put the knife to her throat, and said "if you tell anybody about this, you'll find out what the consequences are . . . ." *Id.* at 80. Todd gave Kelli the knife and told her to stab him in his abdomen; she declined. Josh then came downstairs to ask his parents to stop yelling, made eye contact with Kelli, and silently indicated to her that Todd "[was] faking." *Id.*

[6]  Several hours later, Kelli was able to obtain her keys and phone; she drove straight to her parents' house where her father called the police and filed a police report. A few days after filing the report, Kelli made an appointment for Josh to speak to the police. Todd began following her in his car as she drove Josh to the police station. As she parked at the police station, Todd yanked

Josh from the car and said "he's not talking to the cops . . . ." *Id.* at 83. Josh never gave a statement to the police.

[7] On April 4, 2014,[2] Kelli finished work at Cracker Barrel around 8:00 p.m. She walked to her van and noticed her van door had been opened but not shut properly, as it was slightly ajar. As she went to close it, Todd, dressed in all black, jumped out from behind her van, put his hand over her mouth, and said, "what are you trying to do, get me put in jail?" *Id.* at 110. A struggle ensued and Todd and Kelli fell to the ground. Kelli attempted to yell for help but could not because Todd's hand was covering her mouth. Todd then told her Josh was injured and in the hospital, so she stopped struggling and yelling for help. Kelli told Todd she would meet him at the hospital, and as she began backing out of her parking spot, Todd opened the door and jumped in her van. He told her that he lied to her, Josh was not hurt, and they "were going to talk." *Id.* at 112. Todd then forced her out of the driver's seat and drove them to the marital residence. When they arrived at the marital residence, Todd parked her van near the back of the house so it could not be seen from the street. Todd forced her into the home and kept her phone and her keys. Todd followed her from room to room, not letting her out of his sight, and begging her to get back together. Eventually, she obtained her keys and phone and left.

---

[2] Kelli's testimony refers to this day as April 14 and April 4. *See* Tr., Vol. II at 109, 143. Because the State uses April 4, and Todd uses "Date unknown," Corrected Appellant's Brief at 11, we opt to use April 4.

[8] A similar incident occurred on April 18, 2014, when Kelli and Todd met in the parking lot of a carwash across from the police station to exchange custody of Josh. As Josh approached Kelli's van, Todd walked behind him and pushed him out of the way while holding a knife at waist level. Todd again told Kelli, "we're going to talk." *Id.* at 117. He forced his way into her van, pushed her into the passenger's seat, and drove around Cambridge City until they stopped in the Cambridge City Public Library's parking lot. Todd told Josh to get out and walk to the Dollar Store, which was a couple blocks away. Kelli felt as though she could not leave the vehicle because Todd had the knife lying on his leg. A short while later, Josh returned and informed Todd he saw Kelli's father driving around town, presumably looking for her. Todd became agitated and drove the van back to the marital residence. At the house, Todd forced Kelli to call her father and tell him everything was fine and she was going to spend the night at the house to help Josh with his homework. Kelli spent the night at the house because Todd kept her keys and phone and refused to let her leave.

[9] When she awoke the next morning, she saw Todd outside tampering under the hood of her van, "pulling wires and stuff." *Id.* at 120. She said she needed to get to work and Todd gave her the keys to her van; the van would not start so Todd volunteered to take her to work. But Kelli needed her work clothes, so Todd drove her to her parents' house to retrieve them. Kelli went inside her parents' house and did not come back out. Kelli's father again called the police. This time, Kelli met with Officer Chad Wissler at the Cambridge City Police Department. As they were completing the interview, Kelli noticed Todd in the

parking lot outside the police department. Officer Wissler stepped outside and had a brief conversation with Todd; he then noticed Todd was holding a yellow "Post-It" note and a pen. After Todd left, Officer Wissler removed a note from the window of Kelli's van. The note read, "you lied, I know you were here." Tr., Vol. III at 148.

On April 24, 2014, as Kelli was driving on the I-70 exit ramp to Cambridge City, Todd's car approached her from behind at a high rate of speed. Kelli was speaking to her brother, David Moore, on her cell phone at the time. As she drove onto the exit ramp, she stopped at the stoplight and prepared to make a left turn; there were cars behind her and directly to her right. Todd drove his vehicle in between the cars in the left and right hand lanes, stopping in front of Kelli's van and blocking her from driving. Todd exited his vehicle and walked to the driver's side door of Kelli's van and reached in and took her phone. He then proceeded to get in Kelli's van and forced her from the driver's seat. Todd drove the van a short distance away, parked, exited the van, and walked back to his car to move it and parked it on the edge of the interstate overpass. Todd then drove the van to a rural, isolated area a few minutes away.

Along the way, Todd was "irate, . . . shouting and hollering and getting kind of up in [her] face . . . ." Tr., Vol. II at 130. Todd pulled off the side of the road and began yelling at Kelli, asking why she involved the police and child protective services. After several minutes of yelling, Todd grabbed Kelli's arm and pulled her to the back of the van, telling her, "we're going to have sex . . . ."

*Id.* at 135. Todd then forced Kelli to have sex with him. Shortly thereafter, the police arrived after receiving a call from Kelli's brother and arrested Todd.

[12] A little after midnight on April 25, Todd demanded Kelli return Josh to him, as it was his day to have custody. The Cambridge City Police Department arranged for Officer Stephen Foster to be present at the exchange. At the exchange, Officer Foster heard Todd tell Kelli, "you need to watch your back, bitch." Tr., Vol. III at 78.

[13] On May 2, 2014, the State charged Todd with fourteen counts: Counts I-IV, kidnapping, as Class A felonies; Counts V-XII, criminal confinement, as Class C felonies; and Counts XIII and XIV, stalking, as Class C felonies. The State also alleged Todd was an habitual offender. On March 21, 2016, Todd filed a motion for severance of the counts alleging they were joined because they are of the same or similar character. The trial court denied Todd's motion.

[14] At trial, the State presented and the trial court admitted into evidence other "bad acts" committed by Todd. Specifically, Officer Wissler testified that on May 1, 2014, he received a call from Lincoln High School to investigate an incident involving Kelli's van. The van, which was driven to school by her son, Joe, had the driver's side front and rear tires deflated. Officer Wissler obtained surveillance footage and observed a man enter the parking lot carrying a red and white umbrella. The man then kneeled down next to and tampered with each tire. Kelli told Officer Wissler the umbrella was one she recognized from the marital residence. Officer Wissler also stated other surveillance footage

caught a vehicle matching Todd's driving around the school near that time. Further, on October 24, 2014, Officer Wissler responded to a complaint from Josh Stigleman. The complaint alleged drugs and a firearm were left on the front porch of Kelli's home. At this time, Kelli was again living in the marital residence, as Todd had been evicted. Officer Wissler arrived at the home, spoke to Kelli, and noticed a yellow shoebox on the front porch. A search of the shoebox revealed marijuana, heroin, and a handgun. After speaking with Josh and obtaining a search warrant for his cell phone, Officer Wissler discovered text messages from Todd instructing Josh on how to plant the incriminating evidence. Josh stated Todd told him to do it because "[h]e didn't want to go to jail." Tr., Vol. IV at 40. The trial court also admitted into evidence letters written by Todd from prison asking his new girlfriend to testify she was with him on April 4 and April 18, 2014, even though they had not yet met at that point.

[15] A jury found Todd guilty as charged and the trial court entered judgment of conviction on all counts. At sentencing, the trial court vacated all counts of criminal confinement and amended its judgment of conviction to reflect only Todd's convictions for kidnapping and stalking. The trial court sentenced Todd to forty years for each count of kidnapping, to run concurrently; six years for each count of stalking, to run concurrently with one another and consecutively to the kidnapping counts; and an additional thirty years for the habitual offender enhancement. Todd's total aggregate sentence is seventy-six years

with no time suspended.  Todd now appeals.  Additional facts will be added as necessary.

# Discussion and Decision

## I.  Motion to Sever

Todd contends the trial court abused its discretion in denying his motion to sever the counts.  Specifically, Todd alleges a separate trial should have been afforded to him for the counts related to each date on which he committed a crime.  Todd makes two arguments to support his claim: (1) he was entitled to severance as a matter of right because the crimes were joined solely because they are of the same or similar character, and (2) severance was appropriate under Indiana Code section 35-34-1-11(a).

## A.  Standard of Review

 The basis for joinder determines the amount of deference owed to a trial court's ruling on a motion for severance.  *Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015).  A defendant is entitled to severance as a matter of right where the offenses have been joined *solely* because they are of the same or similar character.  *Id.*  Because a trial court has no discretion to deny such a motion, we review its decision de novo.  *Id.*  But where the offenses have been joined because the defendant's underlying acts are connected together, we review the trial court's decision for an abuse of discretion.  *Id.*  Likewise, a trial court's

refusal to sever counts under Indiana Code section 35-34-1-11(a) is reviewed for an abuse of discretion. *Craig v. State*, 730 N.E.2d 1262, 1265 (Ind. 2000).

## B. Stigleman Was Not Entitled to Severance

[18]     Stigleman argues he was entitled to a separate trial for each date on which he committed a crime; therefore, he alleges the trial court erred in denying his motion to sever the counts. Indiana Code section 35-34-1-9(a) permits the joinder of offenses when the offenses:

> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

However, when "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a). In other words, Todd is not entitled to severance as of right if section 35-34-1-9(a)(2) is met. *See Pierce*, 29 N.E.3d at 1265.

[19]     In *Pierce*, our supreme court succinctly summarized the law in regards to severance.

> [Indiana Code subsection 35-34-1-9(a)(1)] refers to the nature of the charged offenses; subsection (9)(a)(2) refers to the operative

facts underlying those charges. These two subsections are not coextensive: offenses that are of the same or similar character may be premised on totally unrelated circumstances and evidence. For example, although a defendant may be charged with multiple burglaries (the same statutory offense), if the burglaries are factually distinct in terms of their timing, victims, method of entry, transport vehicle, and types of items taken, they fit squarely under subsection (9)(a)(1) but not (9)(a)(2), and severance is available as a matter of right. *Maymon v. State*, 870 N.E.2d 523, 526-28 (Ind. Ct. App. 2007), *clarified on reh'g*, 875 N.E.2d 375 (Ind. Ct. App. 2007). In some instances, of course, crimes that are of the same or similar character may also be based [on] a series of connected acts. *See*, *e.g.*, *Jameison v. State*, 268 Ind. 599, 601, 377 N.E.2d 404, 406 (1978) ("In the case at bar the burglaries were of service stations on I-74 in Shelby County. In both entry was gained by breaking a window and radios were stolen. Thus the crimes charged undoubtedly constituted a series of connected acts."), *abrogated on other grounds*, *Mitchell v. State*, 535 N.E.2d 498 (Ind. 1989).

To determine whether offenses warrant joinder under subsection (9)(a)(2), we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements. It is well-settled that a common *modus operandi* and motive can sufficiently link crimes committed on different victims. In *Craig v. State*, the defendant molested two young girls in a strikingly similar way, by asking them to take a "taste test," covering their eyes with tape, inserting his penis into their mouths, and instructing them to suck on it. 730 N.E.2d at 1264-65. And his common motive—"to satisfy [his] sexual desires"—further tied the crimes. *Id.* at 1265. Because "[those] similarities [were] sufficient to establish that the molestation of each victim was the handiwork of the same person," the defendant had no absolute right to severance. *Id.*

*Pierce*, 29 N.E.3d at 1265-66 (some internal citations omitted).

[20] Todd cites to two cases to support his assertion the offenses were joined only because of their similar character. Specifically, Todd cites to *Wilkerson v. State*, 728 N.E.2d 239 (Ind. Ct. App. 2000), and *Maymon v. State*, 870 N.E.2d 523 (Ind. Ct. App. 2007), *clarified on reh'g*, 875 N.E.2d 375 (Ind. Ct. App. 2007), *trans. denied*. In *Wilkerson*, the defendant was charged with raping two separate victims in Anderson, Indiana. In each offense, the defendant broke into a residence through a window and forced each victim to submit to oral sex followed by vaginal intercourse. The charges were joined for trial and the defendant was found guilty as charged. On appeal following the denial of defendant's petition for post-conviction relief, this court held his counsel was ineffective for failing to move for a severance of the charges, as they were joined solely based on their similar character. This court noted the crimes occurred three weeks apart, at different times of day, at different locations, to different victims. Moreover, the defendant used different weapons and one victim was robbed while the other was not. *Wilkerson*, 728 N.E.2d at 246-47.

[21] In *Maymon*, this court again found the defendant received ineffective assistance of counsel for failing to move for a severance when the charges were joined solely for their similar character. 870 N.E.2d at 528-29. There, the defendant committed four burglaries over the course of three months. Different types of items were stolen from each residence and the defendant was only successful in two of the four burglaries, as he was confronted by the homeowners in the other two attempts. Witnesses of the events in two of the burglaries observed a blue car at the scene, while the witnesses in the other two burglaries observed a red

car. This court held the "facts of each charge do not demonstrate that [the defendant] committed a series of connected acts or that the incidents were part of a single scheme or plan." *Id.* at 528.

[22] Notwithstanding the cases cited by Todd, his argument that his crimes were joined solely on the basis of their same or similar character fails. As previously noted, to determine whether joinder is appropriate under subsection 9(a)(2), "we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements." *Pierce*, 29 N.E.3d at 1266. Here, as argued by the State, the incidents share much more than their criminal category. Todd's actions were connected by his victim, his method, and his motive. Kelli was the victim of each crime, with Todd showing up unexpectedly at her place of work or somewhere he knew she would be. Each time, Todd would force himself into Kelli's van by intimidation, threat, or trick, and tell her they needed to talk. Three of the four kidnappings resulted in Todd forcing Kelli back to their marital residence, yelling at her, and/or attempting to discuss their marriage. Regarding his motive, it appears as if at first Todd desired to reconcile their marriage; however, factoring in the incidents that occurred in May and October of 2014, it is clear his original motive eventually transformed into harassment and retaliation. In sum, Todd committed the same crimes multiple times, in substantially the same way, and against the same victim. *See id.* at 1267. Because the operative facts of Todd's crimes establish a pattern of activity beyond the satisfaction of the statutory elements, subsection 9(a)(2) is satisfied and Todd is not entitled to severance as of right.

Todd next argues the trial court abused its discretion because severance was appropriate under Indiana Code section 35-34-1-11(a). Indiana Code section 35-34-1-11(a) provides, in relevant part,

> In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
>
> (1) the number of offenses charged;
>
> (2) the complexity of the evidence to be offered; and
>
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Thus, Section 35-34-1-11(a) mandates that a trial court, after considering the number of offenses, the complexity of the evidence, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently, sever the charges when necessary to promote a fair trial. Here, although there were fourteen counts, only three different crimes were charged. Moreover, there was only one victim of each count charged, and the State presented Kelli's testimony of the events in chronological order. The offenses were easily distinguishable and largely based solely on Kelli's testimony with corroborating evidence provided by law enforcement officers and Kelli's family. Finally, Todd fails to discuss or point out how the jury would have been unable to

distinguish the evidence and intelligently apply the law in this case.[3]  Therefore, the trial court did not abuse its discretion in denying severance pursuant to Indiana Code section 35-34-1-11(a).[4]

# II.  Admission of Evidence

## A.  Standard of Review

[25]  A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011).  We review its rulings for abuse of discretion, which occurs only if the decision was clearly against the logic and effect of the facts and circumstances.  *Id.*

## B.  Other Bad Acts

[26]  Todd argues the trial court abused its discretion in admitting evidence of prior bad acts, which he asserts should have been excluded pursuant to Indiana Rule of Evidence 404(b).  Specifically, Todd challenges the admission of (1) evidence he attempted to frame Kelli with drugs and a firearm, (2) evidence he tampered

---

[3] The only errors Todd discusses are (1) Kelli's error stating the second kidnapping occurred on April 4 and April 14, 2014, and (2) Kelli's misstatement (which she later corrected) that she spent the night at the marital residence on April 4.

[4] Todd also contends the trial court was required to consider Indiana Rule of Evidence 404(b) in determining whether severance was appropriate.  Todd claims "the Indiana Supreme Court held it is necessary to consider Evid. R. 404(b) considerations in analyzing severance[,]" and cites to *Wells v. State*, 983 N.E.2d 132 (Ind. 2013).  Corrected Appellant's Br. at 26.  Our supreme court heard oral argument in *Wells*, but ultimately vacated its order granting transfer and reinstated the memorandum decision of this court.  Further, the portion of *Wells* cited to by Todd is a dissent from the denial of transfer.  *See Wells*, 983 N.E.2d at 132-40 (Rucker, J., dissenting from the denial of transfer).  Therefore, *Wells* is not appropriately considered precedent for the point Todd advocates.

with the tires on Kelli's van, (3) evidence he tried to entice his new girlfriend to lie at trial, (4) testimony from the guardian ad litem and child protective services agent, and (5) testimony of other acts involving Kelli's family and Todd.[5]

[27] Indiana Rule of Evidence 404(b) states, in relevant part,

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Rule 404(b) prohibits the State from presenting evidence of a person's "crime, wrong, or other act" to the extent it is used to prove a person's character and demonstrate on a particular occasion a person acted in accordance with that character. *Thompson v. State*, 15 N.E.3d 1097, 1101 (Ind. Ct. App. 2014). The purpose of the rule is to protect against the "forbidden inference—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those past bad acts . . . ." *Nicholson v. State*, 963 N.E.2d

---

[5] Todd did not object at trial to the testimony of the guardian ad litem, the child protective services agent, or any of the other acts involving Kelli's family and Todd. Failure to object at trial results in the waiver of the claim of error on appeal. *See Lashbrook v. State*, 762 N.E.2d 756, 759 (Ind. 2002).

1096, 1099-1100 (Ind. 2012) (citation omitted). However, evidence of crimes, wrongs, or other acts are admissible if offered for another purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

[28] In assessing the admissibility of Rule 404(b) evidence, we (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[6] *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997).

### 1. Evidence Todd tampered with Kelli's van and tried to frame her with drugs and a firearm

[29] Todd first alleges it was improper for the jury to hear evidence concerning his tampering with Kelli's van's tires on May 1, 2014, and his attempt to frame Kelli on October 24, 2014, by having Josh place drugs and a weapon on her front porch. Todd asserts the charges for his actions on October 24th are pending, and the "proper forum for a jury to hear evidence of that act is in the trial for that cause." Corrected Appellant's Br. at 19. In rebuttal, the State argues these acts are admissible as evidence of Todd's guilty knowledge.

---

[6] Indiana Rule of Evidence 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[30]     In *Matthews v. State*, 866 N.E.2d 821 (Ind. Ct. App. 2007), *trans. denied*, we reviewed the admission of testimony that the defendant confessed his crime to, threatened, and then shot at a witness for the prosecution. Like Todd, the defendant argued the statements were inadmissible pursuant to Rule 404(b), but we held:

> Threats by the accused against prosecution witnesses are considered attempts to conceal or suppress implicating evidence and are relevant and admissible into evidence. Such threats are viewed as admissions of guilt and therefore are relevant to demonstrate an accused's guilty knowledge. Accordingly, evidence of [the defendant's] threatening and intimidating actions against [witnesses] were admissible for a purpose other than to merely show his propensity to engage in wrongful acts.

*Id.* at 825 (internal quotation and citation omitted). Todd's attempt to frame Kelli with drugs and guns on October 24, 2014 is fairly straightforward. Todd instructed Josh on how and when to plant this incriminating evidence hoping Kelli would be arrested. Josh testified Todd wanted him to do this because "[h]e didn't want to go to jail." Tr., Vol. IV at 40. Todd's attempt to frame Kelli was an attempt to attack the credibility of or suppress her testimony and is highly probative of his consciousness of guilt. *See Larry v. State*, 716 N.E.2d 79, 81 (Ind. Ct. App. 1999) (holding evidence that the defendant beat up a prosecution witness is evidence of guilty knowledge and properly admissible under the knowledge exception of Rule 404(b)).

[31]     Similarly, Todd's deflating of Kelli's tires on May 1, 2014 is also relevant as consciousness of guilt. This event occurred several days after Todd was finally

arrested for his continuing offenses against Kelli. Following his arrest on April 24, Todd told Kelli, "you need to watch your back, bitch." Tr., Vol. III at 78. Six days later, this incident occurred. As we previously noted, "[t]hreats by the accused against prosecution witnesses are considered attempts to conceal or suppress implicating evidence and are relevant and admissible into evidence." *Matthews*, 866 N.E.2d at 825 (citation and quotation omitted).

[32] As to whether the probative value of this evidence is substantially outweighed by a danger of unfair prejudice to Todd, we note Todd's theory at trial was that Kelli also wanted to reconcile their marriage and often willingly accepted his attempts to do so, but was blocked by her family. *See* Corrected Appellant's Br. at 19. Given Todd's theory of the case, we cannot say evidence of Todd's guilty knowledge of the criminality of his acts was substantially outweighed by the danger of unfair prejudice to him. Therefore, we conclude the trial court did not abuse its discretion in admitting evidence Todd tampered with Kelli's van's tires and instructed Josh to plant incriminating evidence on her porch.

### 2. Evidence Todd tried to entice his new girlfriend to give false testimony

[33] The trial court also admitted into evidence the testimony of Nicole Miller, Todd's new girlfriend, and letters written by Todd asking her to give false testimony. Todd asserts this evidence was highly prejudicial with no probative value. The State again counters that the testimony and letters were offered to prove Todd's guilty knowledge, not his propensity to commit bad acts.

In *Bowman v. State*, 51 N.E.3d 1174 (Ind. 2016), the trial court admitted into evidence letters written by the defendant while in prison seeking to secure beneficial testimony from two witnesses. Most of the testimony requested by the defendant was patently false. Our supreme court affirmed the trial court's ruling the letters were admissible pursuant to Rule 404(b)(2) as evidence of a guilty mind. *Id.* at 1180-81.

Similarly, the trial court admitted Miller's testimony and the letters sent to her as evidence of "[Todd's] . . . knowledge." Tr., Vol. IV at 192. The letters reveal Todd asking for favorable testimony and for her to testify she was with him on two of the dates he committed his crimes; Miller had not yet met Todd on those dates and did not meet Todd in person until May 2 or May 3, 2014. The trial court did not abuse its discretion in admitting this evidence.

Finally, we note any error in the admission of evidence concerning Todd's other acts is harmless. "[E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *VanPatten v. State*, 986 N.E.2d 255, 267 (Ind. 2013) (citation omitted). In determining whether a defendant's substantial rights have been affected, a reviewing court must assess the probable impact of the evidence upon the jury. *Id.* The improper admission of evidence is deemed harmless if there is substantial independent evidence of guilt supporting a conviction such that we can say there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Here, there was substantial independent evidence of Todd's guilt

beyond that of his other crimes and wrongs. Kelli testified at length about each incident in chronological order. Kelli's testimony was corroborated by members of her family and they detailed her relationship struggles with Todd as well as her fear of what he may have been capable of doing. Multiple law enforcement officers testified about each incident and corroborated Kelli's testimony. In addition, the trial court gave multiple limiting instructions ordering the jury to consider the challenged evidence only for the purpose of "[Todd's] intent, motive and/or knowledge." Tr., Vol. III at 156. In sum, there is not a substantial likelihood the jury convicted Todd because of his propensity to commit crimes.

## III. Inappropriate Sentence

[37] Todd's final argument requests we exercise our constitutional authority to review and revise his sentence. Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether a sentence is inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id.* at 1225.

[38]     The advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Here, Todd was convicted and sentenced on four counts of kidnapping, as Class A felonies, and two counts of stalking, as Class C felonies. A person convicted of a Class A felony shall be imprisoned for a fixed term between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a). A person convicted of a Class C felony shall be imprisoned for a fixed term between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6(a). Todd received forty years for each count of kidnapping, to run concurrently with each other, and received six years for each count of stalking, to run concurrently with each other but consecutive to his kidnapping sentences. Todd also received an additional thirty years for being an habitual offender. *See* Ind. Code § 35-50-2-8(a), (h) (2005).[7] Todd's aggregate sentence is seventy-six years.

---

[7] Under the criminal code in effect when Todd committed these crimes, the trial court was obligated to sentence Todd to a minimum of thirty additional years for being an habitual offender. Under the criminal code now in effect, the trial court has discretion to sentence an habitual offender convicted of a Level 1 through Level 4 felony to an additional term between six and twenty years. *See* Ind. Code § 35-50-2-8(i)(1) (2014). Todd alleges the doctrine of amelioration should apply, allowing him to be sentenced under the current and more lenient statute. *See Lunsford v. State*, 640 N.E.2d 59, 60 (Ind. Ct. App. 1994) (citing *Vicory v. State*, 272 Ind. 683, 400 N.E.2d 1380, 1381-82 (1980)). However, the doctrine of amelioration does not apply where the legislature, in a specific saving clause, expressly states that crimes committed before the effective date of the ameliorative amendment should be prosecuted under prior law. *Turner v. State*, 870 N.E.2d 1083, 1087 (Ind. Ct. App. 2007). Here, the General Assembly, in enacting the new criminal code, specifically enacted savings clauses. Both Indiana Code section 1-1-5.5-21 and section 1-1-5.5-22 state that the new criminal code "does not affect: (1) penalties incurred; (2) crimes committed; or (3) proceedings begun" before the effective date of the new criminal code sections. The effective date of the new criminal code as it pertains

[39] As to the nature of the offenses, Todd harassed his wife over a period of two months and kidnapped her four times. In one instance, Todd told Kelli to stab him in the abdomen with a knife; in another, Todd intimidated Kelli with a knife. Kelli received scratches to her face during the second kidnapping and was forced to have sex with Todd resulting in a torn hymen during the fourth kidnapping. Moreover, Todd utilized his fourteen-year-old son in several of the kidnappings, often using him as leverage to come in contact with Kelli. Todd also persuaded his son to plant drugs and a weapon on Kelli's porch in an attempt to have her arrested. Nothing about the nature of the offenses persuades us Todd's sentence is inappropriate.

[40] Regarding Todd's character, Todd has a criminal history beyond that used for the habitual offender enhancement which supports an above-advisory sentence. Todd has been convicted of four felonies, including a prior stalking offense. Although only the prior stalking offense relates to his current offense, *see Harris v. State*, 897 N.E.2d 927, 930 (Ind. 2008) (noting the significance of a defendant's criminal history varies based upon the gravity, nature, and number of prior offenses in relation to the current offense), his consistent contacts with law enforcement and the judicial system exhibit a disregard for the law and an

to the habitual offender enhancement is July 1, 2014. Todd committed his offenses in March and April of 2014. Moreover, these sections provide that "Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if [the new criminal code] had not been enacted." *Id.* These sections affirmatively state: "The general assembly does not intend the doctrine of amelioration (see Vicory v. State [272 Ind. 683], 400 N.E.2d 1380 (1980)) to apply to any SECTION [of the new criminal code]." *Id.* Therefore, the doctrine of amelioration cannot be applied to Todd's sentencing.

inability or unwillingness to abide by it. Todd also violated a protective order and has pending criminal causes relating to his other actions. We also note Todd's repeated attempts to undermine the criminal justice system by taking Kelli's phone so she could not call the police, leaving a note on her van after she spoke with a police officer, threatening Kelli with violence if she told anyone about his actions, keeping Josh from speaking with police, deflating Kelli's van's tires, having Josh plant incriminating evidence in an attempt to have her arrested, and attempting to have his new girlfriend give false testimony in his favor. Simply put, nothing about the nature of the offenses or Todd's character persuades us his sentence is inappropriate.

## Conclusion

[41] The trial court did not abuse its discretion in denying Todd's motion to sever the counts or in admitting evidence and his sentence is not inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm Todd's convictions and sentence.

[42] Affirmed.

Baker, J., and Crone, J., concur.